(982 P.2d 985)
No. 81,719

In the Matter of the Adoption of A.P., a minor.

Opinion filed June 11, 1999.

*Michael C. Hayes*, of Oskaloosa, for the appellant.

*Evelyn Allen*, of Circleville, guardian ad litem.

*Mark W. Works*, of Works, Works, & Works, P.A., of Topeka, and *Robert V. Eye, Elizabeth R. Herbert* and *Pedro L. Irigonegaray*, of Irigonegaray &Associates, of Topeka, for the appellee.

Before GREEN, P.J., PIERRON, J., and PRAGER, Chief Justice, Retired, assigned.

PIERRON, J.: In this adoption case, T.P., the natural father of A.P., a minor child, appeals the district court's termination of his parental rights. T.P. argues: (1) He was not unfit pursuant to K.S.A.

59-2136(h)(2) by clear and convincing evidence; (2) the court erred in using factors under the Kansas Code for Care of Children (KCCC); (3) the adoption petition was deficient and the termination petition was not verified; (4) the decision to terminate was contrary to the evidence because he was incarcerated; and (5) the trial court erred in not hearing the adoption petition for which he gave his consent. We affirm.

On August 25, 1997, T.P was convicted of the first degree murder of P.H., the natural mother of A.P., and sentenced to life imprisonment. S.O. (P.H.'s sister) was appointed the guardian and conservator for A.P. Apparently, T.P. consented to the guardianship.

On October 8, 1997, S.O. and her husband petitioned for the adoption of A.P. A.P.'s maternal grandparents filed a petition pursuant to K.S.A. 59-2132(h) stating S.O. and her husband were good parents and positive role models for A.P. T.P. entered an answer and objection to the petition for adoption. He stated he would not consent to the adoption. He also answered that he had not been found to be an unfit parent, his parental rights had never been terminated, and at the time of the filing of the petition, A.P. had not been found to be a child in need of care under the KCCC.

S.O. and T.O. petitioned the court for a termination of T.P.'s parental rights pursuant to K.S.A. 59-2136, that T.P. be determined as unfit under K.S.A. 38-1583, and that A.P. be determined to be a child in need of care under K.S.A. 38-1501 *et seq.* T.P. filed an answer and objection to the termination petition. As part of his objection, T.P. submitted an executed petition for adoption of A.P. by his sister and brother-in-law. Attached to the petition was T.P.'s consent to the adoption. That petition for adoption was filed on December 19, 1997.

The trial court conducted 2 days of hearings on the appellees' motion to terminate T.P.'s parental rights. In its ruling, the court stated that based on the pleadings filed with the court, the action was a proceeding filed pursuant to K.S.A. 59-2136 and the petition requested a determination under K.S.A. 59-2136(h)(2) that T.P. was unfit as a parent and that his consent for the adoption was unnecessary. The court found that pursuant to K.S.A. 38-1583,

certain considerations should be made in terminating parental rights.

The trial court found by clear and convincing evidence that T.P. had engaged in conduct toward A.P. that was of an emotionally abusive nature, including shouting, outrage, intimidating outbursts, and outbursts of temper. The court stated this factor, K.S.A. 38-1583(b)(2), is conduct which affects the emotional and physical well-being of a child.

The trial court also considered conviction of a felony under K.S.A. 38-1583(b)(5). As stated above, T.P. had been convicted of first-degree murder and will be incarcerated for a minimum of 25 years. The court found by clear and convincing evidence that T.P. had murdered A.P.'s natural mother and specifically rejected T.P.'s mitigation of his acts. The court stated T.P.'s version of the incident was physically and medically impossible.

The trial court found there was clear and convincing evidence that T.P. had a propensity toward, and had engaged in, numerous incidents and outbursts of violence and displays of outrage and aggression against P.H., culminating in her murder. The court cited one instance when T.P. pushed P.H., one instance when he kicked her, and one when he hit her in the head with the butt of a handgun. The court also mentioned that T.P. introduced a firearm into a heated and argumentative situation and had done this on prior occasions.

The trial court stated the testimony clearly established conduct by T.P., pursuant to K.S.A. 38-1583(b)(2), which was harmful to A.P.'s emotions and could also be physically harmful. The court also stated pursuant to K.S.A. 38-1583(b)(8) that T.P. was aware his prior conflicts and prior incidents had given rise to distress and potential harm and injury to other parties, and he exhibited a lack of effort to adjust his circumstances or conduct to meet the needs of his child. The court concluded the evidence established that T.P. was unfit by conduct rendering him unable to properly care for A.P. and the conduct was unlikely to change in the foreseeable future. T.P.'s parental rights were terminated.

First, T.P. argues the trial court failed to find by clear and convincing evidence that he was unfit pursuant to K.S.A. 59-

2136(h)(2). From the substance of his argument T.P. suggests, without supporting authority, that the court must find he failed in all seven factors listed in K.S.A. 59-2136(h) in order to terminate his parental rights. It seems he also argues that the mitigation of the other factors prevented termination of his parental rights. T.P.'s argument is without merit. K.S.A. 59-2136(h) clearly provides that when a father appears in an adoption proceeding, the court may terminate his parental rights "upon a finding by clear and convincing evidence, *of any of the following* [seven factors]."

Next, T.P. argues the trial court erred in applying criteria for severing parental rights under the KCCC to severing parental rights in this adoption proceeding under the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*

K.S.A. 38-1583, of the KCCC, provides the factors for the court to consider in terminating parental rights. T.P. argues the trial court cannot use these factors since a child must be adjudicated to be a child in need of care before the court can terminate parental rights under the KCCC. See K.S.A. 38-1583(a); *In re J.L.*, 20 Kan. App. 2d 665, Syl. ¶ 1, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995) ("A prior child in need of care adjudication is a mandatory prerequisite to the termination of the parent/child relationship."). He argues there has never been a finding that A.P. was a child in need of care and there certainly was not such an adjudication at the time S.O. filed her petition. He argues the court should have used the Chapter 59 criteria supported by case law to terminate his parental rights.

Alternatively, T.P. argues that if this court finds the trial court properly considered the termination factors in the KCCC, the proper procedures were not followed under the KCCC. He suggests that in order to use the K.S.A. 38-1583 factors, the court must follow the proper procedures in K.S.A. 1998 Supp. 38-1582(a) and (b), namely, the court must give proper notice of the hearing and notice to grandparents within 10 business days before the hearing. He also states that K.S.A. 38-1533 does not provide for service of summons, notice of hearings, or other process on counsel of record in lieu of the parent.

K.S.A. 59-2136(h) provides that a court may terminate the parental rights of a father who appears at an adoption proceeding if the court finds by clear and convincing evidence the existence of any of seven factors. K.S.A. 59-2136(h)(2) provides for termination when "the father is unfit as a parent or incapable of giving consent." However, K.S.A. 59-2136(h) provides no assistance in what factors a court can or must examine in determining that a father is unfit.

Kansas case law has created a working definition of parental unfitness. In *Sheppard v. Sheppard*, 230 Kan. 146, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982), the court quoted from *In re Vallimont*, 182 Kan. 334, 340, 321 P.2d 190 (1958), for the court's examination of the term "unfit."

"While the standard of fitness required of parents is difficult to specify without being somewhat ambiguous, conduct which makes a parent unfit may be defined within limits. There is no statutory definition of the word 'unfit.' It therefore must be given its ordinary significance, having due regard to the context. In general, the word means unsuitable, incompetent, or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Parents who treat the child with cruelty or inhumanity, or keep the child in vicious or disreputable surroundings, are said to be unfit. Parents who abandon the child, or neglect or refuse, when able so to do, to provide proper or necessary support and education required by law, or other care necessary for the child's well being are said to be unfit. Violence of temper or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness. So, also, incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects." 230 Kan. at 153.

The Kansas Legislature has also helped in forming a working definition of parental unfitness in the context of child in need of care proceedings. K.S.A. 38-1583(b) provides a nonexhaustive list of eight factors the court shall consider in determining that a parent is unfit by reasons or conduct which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future:

"(1)  Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental and emotional needs of the child;

"(2)  conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

"(3) excessive use of intoxicating liquors or narcotic or dangerous drugs;

"(4) physical, mental or emotional neglect of the child;

"(5) conviction or a felony and imprisonment;

"(6) unexplained injury or death of a sibling;

"(7) reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family; and

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child."

K.S.A. 38-1583(c) provides four additional considerations the court shall consider when the child is not in the physical custody of the parent:

"(1) Failure to assure care of the child in the parental home when able to do so;

"(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;

"(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home; and

"(4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

These twelve factors help define parental unfitness.

In making the determination that T.P. was an unfit parent, the trial court took into consideration the factors used in K.S.A. 38-1583(b) to terminate parental rights under the KCCC. The KCCC was the logical statutory framework for the trial court to draw upon in determining parental unfitness since the term "unfit" is not defined in the Kansas Adoption and Relinquishment Act. This does not mean the court found A.P. to be a child in need of care or that the court treated this as a termination of parental rights following the adjudication of a child in need of care. The case at bar was clearly an adoption proceeding where the court held a hearing to determine whether a father was unfit in order to dispense with consent for the adoption. The court's use of the factors under the KCCC was not erroneous and was, in fact, quite logical.

We agree with T.P. that a parent's right of custody and control of his or her children are liberty interests protected by the Fourteenth Amendment Due Process Clause. See *In re J.L.*, 20 Kan. App. 2d 665, Syl. ¶ 2. We also recognize that a natural parent's right to the custody of his or her children is a fundamental right

protected by the Fourteenth Amendment to the United States Constitution which may not be disturbed by the State or by third persons absent a showing the natural parent is unfit. See *In re Guardianship of Williams*, 254 Kan. 814, Syl. ¶ 1, 869 P.2d 661 (1994). We find this case presents such a showing of parental unfitness.

We apply a substantial competent evidence standard of review in examining this case.

"To terminate parental rights in an adoption proceeding, the duty of an appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the trial court's findings. An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. It must review the evidence in the light most favorable to the party prevailing below." *In re S.M.Q.*, 247 Kan. 231, 234, 796 P.2d 543 (1990).

With these rules in mind, we have searched the record to determine whether there is substantial competent evidence to support the trial court's decision that T.P. is an unfit parent. In our view, the record, in the case at bar, contains ample evidence to support the trial court's decision that T.P. was unfit as a parent.

The trial court based its finding on 5 factors. First, T.P. engaged in conduct toward A.P. that was of an emotionally abusive nature, including shouting, outrage, intimidating outbursts, and outbursts of temper. Second, T.P. was convicted of first-degree murder and would be incarcerated for a minimum of 25 years. Third, the murder was of A.P.'s natural mother. Fourth, T.P. had a propensity toward, and had engaged in, numerous incidents and outbursts of violence and displays of outrage and aggression against the natural mother. Last, T.P. failed to adjust his circumstance or conduct to meet the needs of his child.

Simply in passing in his appellate brief, T.P. states that if this court concludes the trial court properly used factors under the KCCC, the evidence does not support a finding that he exhibited conduct toward A.P. of a physically, emotionally, or sexually cruel or abusive nature as described in K.S.A. 38-1583(b)(2). T.P.'s allegation is unpersuasive, and we find there was substantial competent evidence to support the trial court's finding.

We believe the fact that T.P. murdered A.P.'s mother, and, therefore, denied A.P. of her mother's love and affection, is definitely an issue to be considered. We find T.P.'s argument that just because he killed the child's mother does not mean that he is a bad father to be abstractly possible but realistically unlikely. Assuming the child would have knowledge of this fact, it is obvious that would cause immense problems in fostering a close parental relationship.

T.P.'s underlying emotional and other problems, in addition to the fact that he will be in prison during all of A.P.'s minority, are strong additional factors the court was correct in considering as they affected the father's ability to parent.

T.P. also argues, pursuant to K.S.A. 59-2136(d), that the evidence must show that he failed or refused to assume the duties of a parent (both love and affection duties and financial support) for the 2 years immediately proceeding the filing of the petition for adoption in order to establish his unfitness as a parent. See *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 897 P.2d 181 (1995). In the case at bar, we are not concerned with parental duties, K.S.A. 59-2136(d), or stepparent adoptions. Rather, we are concerned with a parent whose parental rights have been terminated because he was found to be unfit under K.S.A. 59-2136(h)(2) and, conversely, not concerned with dispensing with T.P.'s consent because he failed or refused to assume parental duties. *Cf. In re Adoption of K.J.B.*, 265 Kan. 90, 959 P.2d 853 (1998).

Next, T.P. argues the petition for adoption was deficient because it did not comply with K.S.A. 59-2128(a)(1)(B), (D), (E), (F) and (G). He states the petition did not include the time and place of the child's birth, the current residence of the child, the date of birth, residence and address of living parents, and whether the Uniform Child Custody Jurisdiction Act (UCCJA), the Interstate Compact on Placement of Children, and the Indian Child Welfare Act applied. He also states the petition did not include a copy of the birth certificate and the proper written parental consents or facts eliminating the necessity of obtaining parental consent.

T.P. also states the petition for termination of his parental rights was not verified, but merely signed by the S.O.'s attorney. He states

there was no verification to constitute sufficient proof of the statements made therein. T.P. cites K.S.A. 59-2201 and K.S.A. 1998 Supp. 59-2213 for authority that all petitions in a probate proceeding shall be signed and verified by the petitioner and said verification shall constitute sufficient proof of the statements made in the petition.

T.P.'s authority for claiming reversible error is that Kansas courts have consistently held that adoption statutes should be strictly construed in favor of maintaining the rights of the natural parents. See *In re Adoption of F.A.R.*, 242 Kan. 231, 235-36, 747 P.2d 145 (1987); *In re Sharp*, 197 Kan. 502, Syl. ¶ 1, 419 P.2d 812 (1966). T.P. simply argues both the adoption petition and the termination petition should be set aside because they are deficient.

The first time T.P. raised the issues of defective adoption petition and unverified termination petition was in his post-trial motion requesting the court to set aside the termination and reconsider the decision to terminate his parental rights. T.P.'s failure to timely object to or address the insufficiencies of the pleadings under these facts constitutes a waiver.

The guardian ad litem (GAL) responds that issues involving alleged defects in the adoption proceeding are not germane to the termination of T.P.'s parental rights unless they deprive the court of jurisdiction. The GAL states T.P. does not ask for any relief due to the defects and he makes no claim the defects affected the court's jurisdiction.

Considering the issue on its merits, a motion to reconsider is in substance a motion to alter or amend the judgment. *Caplinger v. Carter*, 9 Kan. App. 2d 287, Syl. ¶ 1, 676 P.2d 1300, *rev. denied* 235 Kan. 1041 (1984). Our standard of review is abuse of discretion. See *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994); *Subway Restaurants, Inc. v. Kessler*, 266 Kan. 433, 441, 970 P.2d 526 (1998); 11 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2818 (1995) (abuse of discretion is well-settled standard of review on motion to alter or amend).

First, we find no merit in T.P.'s lack of verification argument. T.P. recognizes that lack of verification is not a jurisdictional defect. See *In re Estate of Shaffer*, 203 Kan. 264, Syl. ¶ 1, 454 P.2d 1

(1969) ("The verification of a petition filed in probate court under the provisions of K.S.A. 59-2201 does not pertain to substance, but to form, and neither an imperfect verification, nor a lack of verification, constitutes a defect in pleading affecting jurisdiction."). Further, the *Shaffer* court, citing *Dubbs v. Haworth*, 102 Kan. 603, 171 Pac. 624 (1918), held that the failure to verify a claim filed in probate court is a defect which may be waived. 203 Kan. at 270. The lack of verification is at this point waived.

Second, the Kansas Supreme Court has addressed the invalidity of an adoption petition based on a party's failure to list all the information required in a petition by K.S.A. 59-2128. In *In re Adoption of J.H.G.*, 254 Kan. 780, the court applied the doctrine of substantial compliance to a deficient adoption petition. The court stated:

"Where a document filed contemporaneously with a petition for adoption includes the requisite information, though that information is not included in the petition for adoption itself, a party has substantially complied with the requirements of K.S.A. 1993 Supp. 59-2128. Substantial compliance with K.S.A. 1993 Supp. 59-2128 can also be found even when neither the petition for adoption nor the documents filed contemporaneously with the petition include some of the required information, if it is clear that the information lacking has no bearing on the adoption in the case at bar." 254 Kan. 780, Syl. ¶ 10.

Because the UCCJA, the Interstate Compact on the Placement of Children, and the Indian Child Welfare Act were not issues in this case, the absence of this information from the petition for adoption does not preclude a finding of substantial compliance here. K.S.A. 59-2128 does require the petition to include whether these three acts are applicable. However, it would seem that the purpose of this requirement is merely to insure that the trial court is informed when those acts do apply. Because the adoption proceedings were not affected by the lack of the information in the adoption petition, the petition for adoption substantially complies with the requirements of K.S.A. 59-2128. See *In re Adoption of J.H.G.*, 254 Kan. at 798.

We also agree with the trial court that any defect the adoption petition had in failing to list A.P.'s current residence, the living parent's date of birth, residence and address, and the facts elimi-

nating the necessity of obtaining T.P.'s consent were cured at the pretrial proceedings and in the evidence presented at the termination hearing. By virtue of the additional evidence presented to the court, we find the petition substantially complied with K.S.A. 59-2128. The trial court did not abuse its discretion in denying T.P.'s motion to reconsider.

Finally, T.P. argues the trial court erred by not hearing the adoption petition entered by his sister and brother-in-law when he consented to their adoption of A.P. T.P. argues it was unnecessary to terminate his parental rights because he had given his voluntary consent to the adoption of his daughter by them. He maintains their adoption petition should have been allowed to move forward and not be postponed by the termination proceedings.

T.P.'s parental rights were terminated on June 16, 1998. The journal entry reflecting that was filed with the district court on July 9, 1998. T.P.'s sister and brother-in-law withdrew their petition for adoption on July 22, 1998. Consequently, all issues surrounding their adoption petition have been rendered moot. Appellate courts do not decide moot questions or render advisory opinions. It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matters in issue before the court. See *Shanks v. Nelson*, 258 Kan. 688, Syl. ¶¶ 1 and 2, 907 P.2d 882 (1995). We do not see this situation as one that would cause us to depart from our usual practice to not decide moot issues.

For future similar situations, the Kansas Legislature has addressed some of the issues of this case. In 1998, the legislature passed two provisions in the KCCC to address the rights to a child of a parent who is convicted of killing the other parent of the child, effective July 1, 1998. See L. 1998, ch. 139, §§ 8, 9; K.S.A. 1998 Supp. 38-1583(h) and K.S.A. 1998 Supp. 38-1585(a)(7). We also note it was the facts of this case and others similar to it that generated the legislation. See House Bill 2820, Minutes of the Senate Committee on Judiciary, March 11, 1998. The legislation established a legal presumption of unfitness of a parent who kills the

other parent and allows the court to disregard the convicted parent's opinions or wishes in regard to the placement of the child.

Affirmed.