(58 P.3d 745)

No. 88,583

IN THE MATTER OF THE ADOPTION OF M.D.K., A Minor Child.

—

 Opinion filed October 25, 2002. 

*Timothy E. Keck*, of Gernon, Burdick & Keck, of Hiawatha, for appellant natural father.

*Steven P. Deiter*, of Mishler & Deiter Law Office, of Sabetha, for appellees adoptive parents.

Before RULON, C.J., BEIER, J., and BRAZIL, S.J.

RULON, C.J.: J.T. appeals from an order which terminated his parental rights as the natural father of M.D.K. under K.S.A. 59-2136(h)(4) for failure to provide support to the mother during the 6 months prior to M.D.K.'s birth. We affirm.

D.K., M.D.K.'s mother, and J.T. began a romantic relationship in February 2000. D.K. became pregnant with M.D.K. in May 2000 during a 3-week period in which the couple was living together. J.T. did not assist D.K. with any bills during this cohabitation but purchased approximately $100 worth of groceries. J.T. became aware of D.K.'s pregnancy in June 2000. Initially, D.K. and J.T. discussed the possibility of marriage. However, the relationship soured and ended in July 2000. M.D.K. was born February 22, 2001.

Beginning in August 2000, D.K. lived with her parents, who supported her throughout her pregnancy. J.T. knew where D.K. lived and worked. From September 2000 to December 2000, J.T. called D.K. approximately once a month. D.K. often told J.T. to stop calling her. In December 2000, D.K.'s mother told J.T.'s mother that she would obtain a restraining order if J.T. continued

to call. J.T. estimated he called D.K. approximately five times in the 6 months prior to M.D.K.'s birth.

D.K. claimed she asked for financial assistance from J.T. on more than one occasion but was rejected. D.K. asserted that J.T. never asked if she needed anything and that she never refused support from J.T. J.T. testified D.K. made no requests for money and, instead, told him everything was going well and that she did not need anything. J.T.'s mother also asked D.K.'s mother if they needed anything and was told no. As we understand, J.T. was advised by legal counsel that he was not required to pay support until a court had issued a custody and support order.

At J.T.'s urging, J.T.'s parents bought D.K.'s car from her for $8,000, in hopes of alleviating her financial difficulties. This amount was $245 more than D.K. owed on the car. In August 2000, J.T.'s mother bought blankets and a picture frame for D.K., which J.T. delivered to D.K. J.T.'s mother and grandmother also made a quilt for M.D.K., which was given to D.K. after M.D.K.'s birth, along with some baby clothes.

J.T. held three jobs in the last 6 months of D.K.'s pregnancy. From September to December 2000, he worked part-time at U.P.S. and at a retail store, making approximately $170 a week. At that time, J.T. was living rent free with his parents. In December 2000, J.T. began working full-time in Iowa, earning more than $1,200 per month. J.T. added M.D.K. to his work health insurance policy after M.D.K.'s birth. J.T. did not inform D.K. of this coverage. J.T. also testified he bought clothes for M.D.K., but that he never delivered them.

About 4 days after M.D.K.'s birth, J.T.'s mother called D.K.'s mother to inquire about the status of the baby but was not told of the birth. The action to terminate J.T.'s parental rights was filed in July 2001. J.T. first sent financial support for M.D.K. in September 2001, then sent an additional payment in November 2001.

Following the termination of J.T.'s parental rights, D.K.'s parents (petitioners) became M.D.K.'s adoptive parents with D.K.'s consent.

To terminate parental rights in an adoption proceeding, the appellate court searches the record to determine whether substantial

competent evidence exists to support the trial court's findings of fact. It does not reweigh the evidence, substitute its evaluation of evidence for that of the trial court, or decide the credibility of the witnesses. The evidence is reviewed in the light most favorable to the prevailing party. *In re Adoption of A.P.*, 26 Kan. App. 2d 210, 216, 982 P.2d 985, *rev. denied* 268 Kan. 886 (1999). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d 664, 29 P.3d 466 (2001) *aff'd* 273 Kan.71, 41 P.3d 287 (2002) (adopting Court of Appeals opinion).

K.S.A. 59-2136(h) provides in pertinent part:

"[T]he court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:

. . . .

"(4) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth."

J.T. first argues that he provided D.K. with "substantial support" in the 6 months prior to M.D.K.'s birth.

As contemplated by K.S.A. 59-2136(h)(4), the term "support" does not include a requirement that "the father provide total support for the mother; however, support that is incidental or inconsequential in nature is not sufficient." Such support "must be of some consequence and reasonable under all of the circumstances." *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 667. This duty includes "not only the [common-law] duty of financial support, but also the natural and moral duty of a parent to show affection, care and interest toward his or her child." *In re Adoption of B.M.W.*, 268 Kan. 871, 873, 2 P.3d 159 (2000). Additionally, mere general offers of support are not sufficient. *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 668.

There is minimal evidence of support from J.T. in the 6 months prior to M.D.K.'s birth. J.T. primarily relies on his parents' purchase of D.K.'s car as proof of support. The trial court found that the amount paid was "nothing more than return of net worth" and

merely fair market value. As such, D.K. was not really in any better financial condition than she was prior to the sale.

The only other support possibly provided to D.K. during the relevant statutory period consisted of some blankets and a picture frame, which were delivered by J.T. in August 2000. Such items do not rise to the level of "some consequence" as required by K.S.A. 59-2136(h)(4). See *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 667.

J.T. argues the health insurance provided by him for M.D.K. should be considered as support for D.K. However, J.T. did not inform D.K. of the insurance and, furthermore, there was no insurance coverage until after the birth of M.D.K.

As far as nonfinancial support provided by J.T. during the statutory period, the record reveals such was essentially nonexistent. J.T. called D.K. approximately once a month from September to December 2000. These phone calls generally resulted in D.K. becoming physically upset.

J.T. further argues that he had reasonable cause for failing to provide the required support. J.T.'s basis for this assertion is that he was financially unable to provide support and that he was "thwarted" in his efforts to do so by D.K. and her mother.

This court has stated that in determining if a father has reasonable cause for failing to provide support to the mother for the statutory period, all relevant circumstances must be considered. *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 667. In making this determination, courts "must determine whether the natural father has pursued the opportunities and options which were available to carry out his duties to the best of his ability. [Citation omitted.]" *In re Adoption of Baby Boy W.*, 20 Kan. App. 2d 295, 299, 891 P.2d 457 (1994).

" '[W]here a trial court finds that a father's reasonable efforts to provide for his child's welfare failed because of interference by the mother, adoption agency, or adoptive parents, the statute should not operate to terminate his parental rights.' [Citation omitted.]" *In re Adoption of Baby Boy S.*, 22 Kan. App. 2d 119, 130, 912 P.2d 761, *rev. denied* 260 Kan. 993, *cert. denied* 519 U.S. 870 (1996). A mother's refusal of assistance offered by the natural father is to

be considered a factor in determining if the father provided support to the mother. *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 667. However, a "mother's failure to act upon a general offer of assistance by not contacting the father and telling him what she specifically need[s] does not amount to interference or a refusal of financial help." *In re Adoption of Baby Boy W.*, 20 Kan. App. 2d at 299.

Importantly, "[t]ermination of the natural father's parental rights is appropriate where the father merely makes general offers of support." *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 668. An "unwed father must act affirmatively during the mother's pregnancy to protect his rights to the child." *In re Adoption of Baby Girl S.*, 29 Kan. App. 2d at 666.

Unquestionably, a "mother's needs and requirements are a relevant circumstance in determining whether a natural father acted reasonably in failing to provide her with support." *In re Baby Boy N.*, 19 Kan. App. 2d 574, 588, 874 P.2d 680, *rev. denied* 255 Kan. 1001, *cert. denied* 513 U.S. 1018 (1994).

J.T. claims the amount of support provided was reasonable because "the best [he] could do was obtain the assistance of his parents." This argument is not compatible with J.T.'s testimony. J.T. held three jobs during the 6 months prior to M.D.K.'s birth. From September to December 2000, J.T. was earning a minimum of $170 per week working part-time. At that time, he lived with his parents, who did not charge him rent. From December 2000 until sometime after M.D.K.'s birth, J.T. worked full-time in Iowa, earning more than $1,200 per month. J.T. admitted giving none of these wages to D.K. J.T. knew where D.K. lived and could have provided some level of financial help to D.K. but chose otherwise. Even if J.T. was misinformed by legal counsel regarding his obligation to support D.K., such improper legal advice does not excuse J.T. from his statutory duty to provide support to D.K. The uncontroverted evidence is that J.T. had the means to support D.K. at least at a minimal level and did not.

Finally, J.T. contends his attempts to support D.K. were hindered by interference from D.K. and D.K.'s mother. Specifically, J.T. cites D.K.'s requests for him to stop calling and D.K.'s threats

to obtain a restraining order against him. In support of his argument, J.T. relies upon *In re K.D.O.*, 20 Kan. App. 2d 559, 889 P.2d 1158 (1995). In *K.D.O.*, this court found substantial competent evidence existed to support the trial court's ruling that the father had reasonable cause for his failure to support. 20 Kan. App. 2d at 561. Such reasonable cause was based on the mother's complete refusal of specific offers of support from the father. In contrast, by J.T.'s own admission, D.K. never refused an offer of specific support from J.T. This record reveals no specific offers of support were made in the 6 months prior to M.D.K.'s birth.

We conclude J.T.'s claim that he was "thwarted" in his attempts to support D.K. has no legal merit. There is a significant distinction between J.T. being hindered in efforts to contact D.K. and being unable to provide support. A father need only carry out an available option to the best of his ability to maintain his rights, but he must act affirmatively. Here, J.T. had income and knew the mother's address yet failed to send any support to D.K. A mother does not interfere with a father's ability to support by avoiding contact and not making specific requests for assistance in response to general offers of support. Here the opportunity to affirmatively support D.K. existed, but J.T. ignored this opportunity.

This case is similar to *In re Adoption of Baby Boy W.* where the father called the mother after learning of the pregnancy and asked if she needed anything on a few occasions. The mother did not follow up on these offers. There was minimal contact between the parents after that. The father's parents also made general offers of help, but neither the father nor his parents offered anything specific. The mother made no specific requests for assistance for fear of giving the father rights to the child. The father did send a $50 check to the mother late in the pregnancy, which the mother accepted. The trial court found the father had failed to support the mother without reasonable cause, and this court affirmed. 20 Kan. App. 2d at 296-300.

Upon reviewing all the evidence, viewed in the light most favorable to the petitioners, we conclude substantial competent evidence existed to support the trial court's ruling that J.T. failed

without reasonable cause to support D.K. in the 6 months prior to M.D.K.'s birth.

Affirmed.

BEIER, J., concurring: I concur in the result and reasoning of the panel's decision. The automobile purchase the father wishes to rely upon not only relieved the mother-to-be of her debt but also of a substantial asset that provided her with transportation. It did not constitute "support for the mother during the six months prior to the child's birth." K.S.A. 59-2136(h)(4).

I write separately only to emphasize briefly the central point of cases such as these and the implications for unwed fathers and the lawyers who assist them in asserting their parental rights.

An unwed man who learns that his unwed sexual partner is pregnant and intends to carry the pregnancy to term has only one way to ensure he can exercise his parental rights after the birth, regardless of whether the mother intends to exercise hers: He must relinquish possession and control of a part of his property or income to the mother-to-be during the last 6 months of the pregnancy so that she may use the items or money to support herself or prepare for the arrival of the child. He must do this regardless of whether his relationship with the mother-to-be continues or ends. He must do this regardless of whether the mother-to-be is willing to have any type of contact with him whatsoever or to submit to his emotional or physical control in any way. The birth may be the event that triggers a legal *obligation* of support, but it marks the end of the period when *voluntary* support can preserve the father-to-be's right to raise his child. He who hesitates truly is lost, and a lawyer who advises otherwise commits malpractice.

Even in the most acrimonious of situations, a father-to-be can fund a bank account in the mother-to-be's name. He can have property or money delivered to the mother-to-be by a neutral third party. He can — and must — be as creative as necessary in providing material assistance to the mother-to-be during the pregnancy and, the law thus assumes, to the child once it is born. He must not be deterred by the mother-to-be's lack of romantic interest in him, even by her outright hostility. If she justifiably or

unjustifiably wants him to stay away, he must respect her wishes but be sure that his support does not remain equally distant.