NOT DESIGNATED FOR PUBLICATION

No. 114,966

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the
Adoption of Baby Boy S
Year of Birth: 2015 A Minor Child

MEMORANDUM OPINION

Appeal from Labette County District Court; JEFFRY L. JACK, judge. Opinion filed September 2, 2016. Affirmed.

*Brian K. Johnson*, of Johnson Law Firm, LLC, of Oswego, for appellant natural father.

*Megan S. Monsour* and *Teresa L. Adams*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee natural mother.

Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

*Per Curiam*: M.M.F. appeals the decision of the Labette County District Court terminating his rights as the father of Baby Boy S after the boy's mother agreed to have another couple adopt the infant. Following a hearing, the district court found M.M.F. to be an unfit parent—a conclusion amply supported in the evidence and a sufficient legal basis for termination of parental rights under the Kansas Adoption and Relinquishment Act, K.S.A. 2015 Supp. 59-2136(h)(1)(B). We, therefore, affirm the district court's ruling.

Baby Boy S was born in April 2015. M.S., his mother, voluntarily relinquished her parental rights and agreed to an adoption. M.M.F. and M.S. were not married to each other, but M.M.F.'s paternity is undisputed. M.M.F. declined to willingly cede his

1

parental rights. M.S. filed a petition under the Adoption and Relinquishment Act to terminate M.M.F's rights, so the adoption could be completed. In conformity with the Act, the district court appointed a lawyer to represent M.M.F. and held an evidentiary hearing in October 2015. On November 12, 2015, the district court entered a detailed journal entry terminating M.M.F.'s rights as the father of Baby Boy S. M.M.F. has appealed the decision.

Under the Adoption and Relinquishment Act, a district court may terminate the parental rights of a child's father in conjunction with an adoption for any of seven statutorily identified reasons, including being "unfit as a parent." K.S.A. 2015 Supp. 59-2136(h)(1)(B). The grounds for termination must be proved by clear and convincing evidence. K.S.A. 2015 Supp. 59-2136(h)(1). The Adoption and Relinquishment Act does not define unfitness. But the Kansas courts have treated the concept as meaning "unsuitable, incompetent, or not adapted for" parenting as demonstrated by the particular factual circumstances. *Sheppard v. Sheppard*, 230 Kan. 146, 153, 630 P.2d 1121 (1981). A parent who abandons, neglects, or refuses to support a child when otherwise able to do so, thereby depriving the child of care essential for his or her well-being, may be characterized as unfit. 230 Kan. at 153.

The Kansas courts frequently look to the Revised Kansas Code for the Care of Children, K.S.A. 2015 Supp. 38-2201 *et seq.* for guidance, since that statutory scheme also entails determination of parental fitness and termination of parental rights. See *In re Adoption of A.P.*, 26 Kan. App. 2d 210, 214-15, 982 P.2d 985, *rev. denied* 268 Kan. 886 (1999). Although the revised code and decisions construing its language are not controlling, they are illuminating and highly persuasive in applying the Adoption and Relinquishment Act with regard to the issues common to both. For example, the revised code includes an illustrative list of factors that are indicative of parental unfitness. K.S.A. 2015 Supp. 38-2269(b), (c).

2

The clear and convincing evidence standard requires the factfinder, here the district court, to conclude "that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008). In reviewing a district court's decision to terminate parental rights, an appellate court must be convinced, based on the full evidentiary record viewed in a light favoring the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." 286 Kan. at 705. The appellate court may not weigh conflicting evidence, pass on the credibility of witnesses, or otherwise redetermine questions of fact. 286 Kan. at 705. Here, any disputes in the evidence must be resolved against M.M.F. He, nonetheless, contends the record fails to support the district court's decision.

As we have indicated, the district court primarily relied on a finding of M.M.F.'s unfitness to support terminating his parental rights. And that alone affords a legally sufficient basis. K.S.A. 2015 Supp. 59-2136(h)(1)(B) (court warranted in ordering termination of parental rights based on "any of the following: . . . the father is unfit as a parent"). The district court secondarily relied on M.M.F.'s failure to support M.S. during the 6 months before Baby Boy S's birth and M.M.F.'s failure to support or communicate with Baby Boy S after his birth, as provided in K.S.A. 2015 Supp. 59-2136(h)(1)(C) and (D). As permitted by K.S.A. 2015 Supp. 59-2136(h)(2)(A), the district court also found that "the best interest" of Baby Boy S favored termination of M.M.F.'s parental rights.

Given the primacy of the district court's determination of unfitness and the record evidence on the point, we focus our review on that consideration.

M.M.F. was about 50 years old when he met M.S. He worked intermittently, often in unskilled or semiskilled construction jobs. After M.S. became pregnant, M.M.F. took a job in Fort Scott. The two then moved to Garland, Texas, so M.M.F. could work on another job for the same employer. They mostly lived with M.M.F.'s boss. During that time, M.M.F. drank frequently and often to excess. Although he had no license, M.M.F.

3

did not hesitate to drive even after drinking heavily. According to M.S., their relationship began to fray. After M.M.F. was jailed in Texas on a public intoxication charge, M.S. returned to Kansas and stayed first with her parents and then in a privately operated residence for pregnant women without financial support. M.M.F. returned from Texas and found M.S. at the residence. M.M.F. took at least one temporary construction job and worked at a couple of fast food restaurants, but he regularly lived in homeless shelters in Wichita and Newton. While M.S. was at the residence, M.M.F. sent her a $60 debit card for the specific purpose of buying a cell phone, so they could communicate. There was conflicting evidence about any additional financial support from M.M.F. leading up to Baby Boy S's birth. Even crediting M.M.F.'s testimony, the district court appropriately characterized the support as incidental. See K.S.A. 2015 Supp. 59-2136(h)(2)(B) (district court may disregard incidental financial contributions). M.M.F. and M.S. exchanged calls and text messages. But M.S. perceived the communication turning abusive and cut off contact with M.M.F.

Around the time Baby Boy S was born, M.M.F. had been living with a friend in Mound City and working sporadically. Two days after Baby Boy S was born, M.M.F. and his friend went to Missouri. While there, M.M.F. got into an argument with his friend and then stabbed the man. M.M.F. was convicted of felony assault in Missouri and was imprisoned in Missouri through mid-October 2015.

Based on the evidence at the termination hearing, the checkered relationship M.M.F. had with M.S. and his casual attitude toward regular employment and stability in what would generally be considered other significant associations during that period seems to be a microcosm of his entire adult life. M.M.F. acknowledged having 8 other biological children and testified he adopted yet another child. He knew the addresses and telephone numbers for none of them. He hadn't seen some of those children in a decade and owed support for several of them. M.M.F. has been arrested 15 to 20 times, has convictions for at least four violent felonies, and has three or four driving-under-the-

4

influence convictions. M.M.F. has never owned a home or had a residential lease in his name. He typically resides periodically with friends, family, business associates, or in homeless shelters. Sometimes—as after the birth of Baby Boy S—he has lived at government expense in jail or prison.

Although M.M.F. professed at the hearing that he intended to do better if he were allowed to parent Baby Boy S, the district court discounted that as wholly inconsistent with the 30 years or so in which M.M.F. had charted the course of his adulthood. The district court concluded it could "only judge past actions [and] not future intentions." And considering those actions, the district court characterized M.M.F. as "a drifter" with little or no initiative or capacity to "take care of himself." In turn, the district court necessarily inferred M.M.F. would be incapable of raising Baby Boy S—an entirely reasonable deduction, especially given his utter lack of involvement with his other children.

Accordingly, the district court found M.M.F. to be unfit to parent Baby Boy S and terminated his parental rights. We have no reason to disagree. The evidence was clear and overwhelmingly supported the district court's conclusion. This is not a close case. There is little reason to repackage what we have already outlined and explain in more detail why M.M.F. should be considered an unfit parent. He could not be considered anything else, and nothing in his background or recent actions would suggest an ability to do better. All of that is more than sufficient to affirm the district court's decision.

We mention that the evidence would support several of the statutory grounds for parental unfitness set forth in the Revised Kansas Code for the Care of Children: Use of intoxicating liquor to a degree that would render the parent unable to care for the needs of the child on a continuing basis; conviction of a felony and imprisonment; lack of effort to adjust circumstances to meet the needs of a child; and failure to assure adequate care of the child in the parental home. K.S.A. 2015 Supp. 38-2269(b)(3), (5), (8), (c)(1). Those

5

considerations are not themselves determinative, but they buttress the district court's conclusion.

The district court also found that the best interest of Baby Boy S favored terminating M.M.F.'s parental rights—another statutory factor the district court may consider under the Adoption and Relinquishment Act. K.S.A. 2015 Supp. 59-2136(h)(2)(A). Essentially, the same evidence demonstrating M.M.F.'s categorical unfitness also established that Baby Boy S's best interest weighed heavily for termination of parental rights. The district court plainly reached a proper conclusion on that score, as well.

As we noted, the district court found that M.M.F. failed to support M.S. in advance of Baby Boy S's birth and failed to support or communicate with Baby Boy S after his birth. Those are also grounds permitting the termination of parental rights in an adoption proceeding. K.S.A. 2015 Supp. 59-2136(h)(1)(C), (D). We see no need to prolong our discussion by parsing the evidence as to those points. The district court did not rest its decision principally on them. We put them to one side and rely on the compelling evidence of M.M.F.'s unfitness and Baby Boy S's best interest as more than legally sufficient to uphold the termination of M.M.F.'s parental rights.

Affirmed.