NOT DESIGNATED FOR PUBLICATION

Nos. 119,788
119,789

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of J.D.W., A Minor Child.


MEMORANDUM OPINION


Appeal from Doniphan District Court; JAMES A. PATTON, judge. Opinion filed February 15, 2019. Affirmed.


*David J. Brown*, of Law Office of David J. Brown, LC, of Lawrence, for appellant.


*Andrew E. Werring,* of Werring Law Office, LLC, of Atchison, for appellee.


Before GARDNER, P.J., HILL and SCHROEDER, JJ.


PER CURIAM:  Children need parents while they are still children. Promises and good intentions are hollow gestures, inadequate for the important tasks of rearing a child. Because of this urgency, Kansas law, by creating a rebuttable presumption of parental unfitness, calls for a court to terminate the parental rights of a parent if that parent fails or refuses to assume the duties of a parent for two consecutive years next preceding the filing of a stepparent adoption petition. The court here followed that law and in a comprehensive, well-reasoned opinion, granted a stepfather's adoption over father's objections. After reviewing the record, we find no flaw in the judge's fact-finding or conclusions of law. We affirm.


This is a combined appeal of a paternity case and a stepparent adoption. J.W., father of J.D.W., a minor, appeals the district court's order denying him any relief in the paternity action and the grant of Stepfather's adoption petition. The facts are not disputed.

1

*A paternity action involved the court early in this child's life.*

J.D.W. was born in August 2010. At some point after J.D.W.'s birth, Mother and Father ended their relationship. Then, in a paternity action, in June 2011, the court granted Father temporary primary residential custody of the child. But in September 2011, the district court ordered joint legal and shared residential custody when the parties agreed to this arrangement. But circumstances changed.

Father was involved in a single-car traffic accident in February 2012, while the child was in the car with him. Father was arrested and charged with various crimes including felony driving under the influence, felony possession of narcotics, and felony aggravated endangerment of a child. He entered a guilty plea to misdemeanor DUI and refusal of a preliminary screening test; the remaining charges were dismissed.

Later in May 2012, the district court ordered shared legal and residential custody between Father and Mother, in which both parents had equal residential time with the child. The district court ordered that neither party needed to pay child support as long as this equal time arrangement was in place. The district court also specified that the parties were subject to alcohol and drug testing.

On March 15, 2014, Mother married Stepfather.

In the same month, the court modified the custody, parenting time, and child support orders. It switched primary residential custody to Mother and reduced Father's parenting time to one day per weekend of supervised time at the paternal grandparents' home. The court ordered that once Father completed substance abuse treatment, his parenting time would increase to alternate weekends and one evening per week. All prior orders on alcohol use remained in effect. At that point, the court held that it would rule later on child support.

*Father's involvement in his child's life decreased significantly.*

After Father began working at a manufacturing company in Horton, Kansas, the parties agreed that he would pay child support in the amount of $359 per month, effective April 1, 2014, through August 2014. On September 1, 2014, the monthly amount increased to $414 per month. The district court also ordered:

> "*All payments of support*, whether for current child support, or any arrearages which may accrue, *shall be made through the Kansas Payment Center* who shall forward said payments to [Mother], the child's custodian, *payments not made through the Kansas Payment Center at the address below should be presumptively disallowed and construed as gifts*;

> "KANSAS PAYMENT CENTER
> "P.O. BOX 758599
> "TOPEKA, KS 66675-8599." (Emphases added.)

In August 2014, Father exercised his supervised parenting time with J.D.W. for the child's birthday. Around this time, Atchison County issued a warrant for Father's arrest for a probation violation. Father had failed to report to the Atchison County Jail to serve a 30-day sanction for a separate probation violation. He failed to report because he had used illegal substances for which he knew he would test positive.

After his August 2014 visit, Father did not attend any of his scheduled parenting time sessions with J.D.W. and did not show up to the exchange point—the Atchison County Sheriff's Office—because he was afraid he would be arrested. He requested no alternate exchange point. Mother continued to take J.D.W. to the exchange point, but Father did not show up. After Father failed to show up three times, Mother stopped taking J.D.W. for parenting exchanges. Around this time, Mother denied Father parenting time with J.D.W. because of his substance abuse and legal problems. In October 2014,

3

Father was charged with drug possession in Buchanan County, Missouri. The August 2014 visit was Father's last court-ordered visit with J.D.W.

After he was arrested, Father served sentences for convictions in three different jurisdictions: Doniphan County, Kansas; Atchison County, Kansas; and Buchanan County, Missouri. In January 2016, while incarcerated in Atchison County, Father was charged with aggravated battery.

Mother did not take J.D.W. to visit Father. She claimed Father did not ask her to, but even if he had asked, she would not have taken the child to visit Father in jail. Father claimed he sent letters to J.D.W. from jail, and he believed Mother threw them away. Alternately, a cellmate of Father's claimed that in the five months they were in jail together, Father wrote three or four letters to find out how J.D.W. was doing and whether he could call J.D.W. Father and his cellmate claimed the letters were returned unopened. Mother denied receiving any letters from Father.

While incarcerated, Father earned $9 per month.

After Father's incarceration ended, he entered an inpatient substance abuse treatment program in early September 2016. He completed the program and then began living at a halfway house. While at the halfway house, Father earned income from working various jobs.

From about mid-September to mid-November 2016, Father called Mother about 12 times, but Mother would not answer or return his messages. Mother stated she was advised by two attorneys to not respond to Father but to wait for him to approach her through the court system. Sometime in the fall of 2016, Father contacted his attorney about how to proceed with visitation.

4

Father lived at the halfway house for about four months until January 2017, during which time he continued with outpatient treatment and worked. In February 2017, Father withdrew $5,000 from a retirement account. He sent a message to Mother on social media, asked to see J.D.W., and offered to pay child support. Mother did not respond, and Father paid no child support. He did pay part of the $5,000 toward an old consumer loan for a motorcycle he no longer possessed and a portion toward a loan for attorney fees.

*The parties return to court, this time, in two cases.*

In March 2017, Father moved for an order to enforce parenting time. He alleged he last requested parenting time in January 2017, but Mother did not permit it.

Stepfather filed his petition to adopt J.D.W. in April 2017. Mother consented to the adoption, but Father objected to it. In his objection, Father claimed that while he was incarcerated, he wrote letters to J.D.W. but believed Mother threw the letters away. Father then filed an amended motion in May 2017, in which he informed the district court that he completed his substance abuse rehabilitation and wanted to start his increased parenting time under the March 2014 order to alternate weekends and one evening per week. He alleged Mother was nonresponsive and had cut off all contact with him.

At the end of July 2017, through the attorneys, Father sent $7,000 to reduce his child support arrearage. Mother's attorney received the check on August 2, 2017. In the 40 months since the child support order was filed, effective April 1, 2014, this was the first and only payment toward child support Father made. Father's total arrearage, when he paid the $7,000, was over $16,000.

After a combined evidentiary hearing on Father's motion to enforce parenting time and Stepfather's petition to adopt the child, the district court issued a memorandum

decision. The district court summarized the facts consistent with those listed above and found that the evidence was uncontroverted.

*The court looked at the child support obligation.*

Father paid $7,000 after Stepfather filed his petition for adoption. But Father could have paid $5,000 before filing the petition and did not. Father provided no evidence of any payments toward his child support obligation in the two years next preceding Stepfather's petition. Father did not establish a bank account into which he could have made child support payments pending the outcome of the legal proceedings. He did not present evidence excusing him from paying child support while he was incarcerated, and he did not seek to modify the child support order. The district court found there was clear and convincing evidence that Father failed to assume parental duties in the two years next preceding the filing of Stepfather's petition.

Because Father had been incarcerated for a significant period prior to Stepfather filing his petition for adoption, the court considered additional facts such as Father's decision to avoid his scheduled parenting time because of his fear of arrest. The court observed that Father's criminal acts and substance abuse "prevented meaningful parenting time" with J.D.W. The record supports these findings.

The court also noted that Father said he wrote letters from jail, but he did not claim to have sent birthday or Christmas cards or gifts, or even $5 per month, and he "did nothing else during his jail sentence to show affection, care or interest." The court also noted that although Father claimed to have the returned letters at home, he did not introduce them into evidence. The court found that these efforts at contact—even in the context of incarceration—were incidental and should be disregarded.

Highly summarized, the court found that Father failed to pay court-ordered child support for two years next preceding the filing of the adoption petition, and he failed to provide adequate affection, care, or interest. The court determined there was clear and convincing evidence that Father failed to pursue the opportunities and options available to him to carry out his duties as a parent to the best of his ability. Finally, the court found that Father failed to rebut the statutory presumption in K.S.A. 2017 Supp. 59-2136(d). The court terminated Father's parental rights, granted Stepfather's petition for adoption, and dismissed Father's motion to enforce parenting time as moot.

Father moved for reconsideration. After entertaining oral arguments and considering additional briefing on the matter, the court found that Father presented no new facts or evidence and treated Father's motion as a motion to alter or amend judgment. The court noted in part that the child support order required payment to the Kansas Payment Center, which did not require contact between the parties. The court again noted the $5,000 Father could have paid toward his child support arrearages within the statutory two-year window preceding Stepfather's petition for adoption but did not. The court denied Father's motion.

*We review for substantial competent evidence and correct legal conclusions.*

To us, Father contends that the district court's conclusions—that he failed or refused to assume the duties of a parent for two years preceding Stepfather's filing of the petition for adoption—were unsupported by substantial evidence. Mother contends that the district court correctly determined that the evidence supported its findings that Father's parental rights should be terminated and Stepfather's adoption of J.D.W. should be granted.

A district court's finding under K.S.A. 2017 Supp. 59-2136(d) that a parent has refused or failed to assume parental duties for two years before the filing of the petition

for stepparent adoption is a finding of fact that will be reviewed on appeal to determine if it is supported by substantial competent evidence. *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011). In determining whether the parent's efforts amount to an assumption of parental duties, the court must examine all circumstances. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010).

Adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents where the statute is being used to terminate the right of a natural parent without consent. *In re Adoption of Baby Girl P.*, 291 Kan. at 430; *In re A.S.*, 52 Kan. App. 2d 173, 177-78, 364 P.3d 1203 (2015). The party seeking to terminate a parent's rights has the burden of proving by clear and convincing evidence that termination is appropriate under K.S.A. 2017 Supp. 59-2136. *In re Adoption of Baby Girl P.*, 291 Kan. at 430. When determining whether factual findings are supported by clear and convincing evidence, an appellate court does not weigh conflicting evidence, pass on the witnesses' credibility, or redetermine questions of fact. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010).

In a stepparent adoption, such as this one, K.S.A. 2017 Supp. 59-2136(d) provides that the father's consent to the adoption is required unless the father has failed or refused to assume his parental duties for two consecutive years immediately before the filing of the petition for adoption.

> "In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent. The court may consider the best interests of the child and the fitness of

8

the nonconsenting parent in determining whether a stepparent adoption should be granted." K.S.A. 2017 Supp. 59-2136(d).

The district court found that the statutory presumption of unfitness applied to Father and that he had failed to rebut that presumption. Father argues that because he was incarcerated for much of the two years next preceding Stepfather's petition, the district court had to consider additional financial factors *outside* the two-year limit set in the statute. Father contends that if the district court looked outside the two-year statutory time frame, it should have looked only at his actions after the petition was filed— specifically, his payment of $7,000. Even though he paid it after Stepfather's petition was filed, Father claims that the legal effect of this payment shows he actually contributed significantly to the costs of supporting his child in the two years immediately preceding the filing of the petition. Wanting to limit the view of the court, Father also argues that the district court erred in considering his history of failing to make child support payments before his incarceration because it was outside the statutory two-year time frame. So, Father wants the court to consider the $7,000 payment, which was outside the two-year period, but not consider his failure to pay, which was also outside the statutory time frame. This is inconsistent, at best. Neither position is persuasive.

Father cites no authority for either position. Issues not adequately briefed are considered waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

We choose not to read something into the law that is not there. The Legislature's inclusion of a two-year time frame preceding the petition in the statute implies the exclusion of postpetition exceptions. The plain language of the statute is clear:  the

9

statutory time frame is two years next preceding the filing of the petition. To allow postpetition payments to have the "legal effect" of being considered, a pattern of consistent financial support for a child, as Father seeks here, renders the statutory time frame meaningless. Children need support every month, not just in a lump sum to ward off a pending adoption. Besides, there is more to parenting than paying child support.

*We examine Father's child support argument.*

Father argues that because he was incarcerated, he experienced significant limitations on his abilities to carry out his parenting duties and pay child support. Caselaw teaches us that when a nonconsenting parent is incarcerated and thus unable to fulfill the usual parental duties performed by unrestrained parents, the court must decide whether the parent has sought the opportunities and options which could be available so he or she may perform those duties to the best of his or her abilities. *In re Adoption of S.E.B.*, 257 Kan. 266, 273, 891 P.2d 440 (1995). If an incarcerated parent has made reasonable efforts to contact and maintain a continuing relationship with his or her children, it is up to the trial court to determine whether such efforts are sufficient. *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987). "In determining whether a father's consent is required . . . , the court may disregard incidental visitations, contacts, communications or contributions." K.S.A. 2017 Supp. 59-2136(d).

And Father was gainfully employed after he was released from jail and substance abuse treatment. Father worked nearly continuously at various jobs from around September 2016—when he completed inpatient treatment—to April 2017—when Stepfather filed his petition. In those eight months, Father did not make one child support payment. When Father had $5,000 in March 2017, he did not apply any of that money to his child support arrearage. He opened no account for J.D.W., and he did not seek to modify his support obligation.

10

The district court noted also that in the year leading up to Father's incarceration, his pattern of nonpayment started with the child support order itself. Father made no payments, even while he was working and attending his scheduled parenting time. The evidence also showed that Father deliberately failed to attend scheduled parenting time and did not adhere to the parenting time plan for about eight months before his incarceration.

Father claims that he made many attempts to see J.D.W. and pay child support after he got out of jail. He told his attorney he wanted to pay child support, requested to see the child, and offered to make a payment via social media messages to Mother and Stepfather. The duty to support a child includes "not only the [common-law] duty of financial support, but also the natural and moral duty of a parent to show affection, care and interest toward his or her child." *In re Adoption of B.M.W.,* 268 Kan. 871, 873, 2 P.3d 159 (2000).

Father seems to suggest that he did not pay, or was excused from paying, his child support after he was released from jail because of Mother's actions or inactions of blocking his calls and her failure to respond to his social media messages. Indeed, it is true that a mother's refusal of assistance offered by the natural father is a factor in determining if the father provided support to the mother. *In re Adoption of Baby Girl S.,* 29 Kan. App. 2d 664, 667, 29 P.3d 466 (2001). But a mother's failure to act on a general offer of assistance does not amount to interference or a refusal of financial help. See *In re Adoption of Baby Boy W.*, 20 Kan. App. 2d 295, 299, 891 P.2d 457 (1994). Mere general offers of support are insufficient. *In re Adoption of Baby Girl S.,* 29 Kan. App. 2d at 668.

While it is true that a restrained father need only carry out an available option to the best of his ability to maintain his rights, he must act. *In re Adoption of M.D.K.*, 30 Kan. App. 2d 1176, 1181, 58 P.3d 745 (2002). Inaction does no good for the parent or the child. Here, Father fails to acknowledge that the child support order required that he

11

make all support payments through the Kansas Payment Center, which did not require contact between the parties. Under provisions of the child support order, Father did not need to wait for a response from Mother to make such a payment. Here, Father had the opportunity to support J.D.W. but failed to do so.

Additionally, the trial court found that while Father was incarcerated, he failed to make and maintain contact with J.D.W. The court held that Father did not show that he sought opportunities available to him to perform his parental duties to the best of his abilities. Father claimed he wrote letters from jail, which were returned to him, and which he kept. But he did not introduce them into evidence, even in support of his motion for reconsideration. The record on appeal supports this finding.

*We will not consider Father's judicial bias argument.*

For the first time on appeal, Father claims judicial bias or misconduct. He does not explain why he did not raise this issue in district court, nor does he argue that any of the recognized exceptions to our rule apply to this issue so this court should consider it. Our rules on this point are clear and well settled.

Issues not raised before the trial court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014).

And Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue was not raised below and should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who violate this rule risk a ruling that the issue is improperly

briefed, and the issue will be considered waived or abandoned. The Supreme Court later held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Following the clear directions of our highest court, we will not address this issue. The record on appeal demonstrates that the court was entitled to apply the statutory presumption of unfitness in this adoption. We find no error and affirm.

Affirmed.