No. 44,872

In the Matter of the Adoption of Terry Kay Marsolf, a Minor Child, Gary Lee Wiley and Freida Mae Wiley, *Appellants* and *Cross Appellees,* v. Carolyn Sue Marsolf Clayton, *Appellee* and *Cross Appellant.*

(434 P. 2d 1010)

Opinion filed December 9, 1967.

*Charles R. Moberly,* of Wichita, argued the cause, and was on the brief for the appellants and cross appellees.

*Otto J. Koerner,* of Wichita, argued the cause, and was on the brief for the appellee and cross appellant.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal from a judgment of the district court denying the petition filed by Gary Lee Wiley and Freida Mae Wiley (petitioners-appellants) for the adoption of Terry Kay Marsolf, a minor child of Carolyn Sue (Marsolf) Clayton (respondent-appellee). For convenience, the appellants will be referred to as the Wileys, and the appellee as Mrs. Marsolf.

The determinative question involves the lack of consent to the adoption by Mrs. Marsolf's former husband, Gail Ray Marsolf.

The material facts are not in substantial dispute. The Marsolfs were first married November 20, 1958. The marriage ended in divorce on June 3, 1960. Terry Kay, the subject of this adoption, was born March 17, 1961 (nine months and thirteen days after the divorce). The Marsolfs were subsequently remarried October 27, 1962, and again divorced October 31, 1963. The latter decree of divorce recites that five children, including Terry Kay, were born of the marriage, and their custody was awarded to Mrs. Marsolf. From June through August 1964, Mrs. Marsolf received $150 child support from Mr. Marsolf.

On or about February 8, 1965, Mrs. Marsolf voluntarily entered Larned State Hospital where she remained for approximately twelve days. During this period the children were cared for by members of Mrs. Marsolf's family. However, Mrs. Marsolf's brother, John Hall, arranged for Terry Kay to stay with the Wileys. Upon Mrs. Marsolf's return from the hospital the Wileys expressed an interest in adopting Terry Kay, and there followed considerable discussion on the subject between the Wileys, Mr. Hall and Mrs. Marsolf. Finally on March 10, 1965, Mrs. Marsolf went to the office of the Wileys' attorneys and executed a written consent to the adoption. In the consent Mrs. Marsolf identified herself as "the unmarried mother of Terry Kay Marsolf," and it was further stated therein she had "the sole and exclusive right to consent to the adoption . . .; and that the consent of any other person or persons" was unnecessary.

The following day, March 11, the Wileys filed their petition for adoption with the consent attached in the probate court of Sedgwick county. An investigation was conducted by the State Department of Social Welfare and a report was subsequently filed with the court. On April 13, after a hearing at which the Wileys, their

attorneys and Terry Kay appeared, the probate court granted the petition for adoption. A supplemental birth certificate based on the decree was obtained on April 28 from the Division of Vital Statistics of the State Board of Health.

On May 4, Mrs. Marsolf filed in the probate court an instrument denominated "Petition Withdrawing Consent by Natural Parent Demanding That Adoption Decree Be Set Aside." The petition stated that Mrs. Marsolf was withdrawing her consent and demanding that the adoption be set aside and Terry Kay returned to her because the consent was executed under extreme duress and undue influence. No action was taken on the petition by the probate court.

Mrs. Marsolf subsequently perfected an appeal on May 12 to the district court from the decree of adoption granted by the probate court. After a lengthy hearing, the district court, on January 11, 1966, found *inter alia* that Terry Kay was the legitimate child born of the marriage of Carolyn Sue Marsolf and Gail Ray Marsolf, and that said father had not consented to the adoption. The lower court concluded that because the father's consent had not been obtained, the court was without jurisdiction to grant the adoption. A motion for new trial filed by the Wileys was subsequently overruled, and they have appealed.

A cross appeal has also been filed by Mrs. Marsolf from the finding of the lower court that her consent to the adoption was executed without duress or undue influence.

It is noted that the record fails to disclose whether or not Gail Ray Marsolf was given notice of the proceedings in either the probate or district court. At any rate, he made no appearance at any stage of the proceedings.

The Wileys contend that because of the statements in the consent to adoption executed by Mrs. Marsolf, and the fact she did not appear in the probate court and present any defenses, she had no right to appeal to the district court. In face of the plain provisions of our statutes governing appeals from the probate court, the argument is untenable.

Under the provisions of K. S. A. 59-2401, an appeal to the district court may be taken from an order of the probate court decreeing or refusing to decree an adoption. K. S. A. 59-2404 states in part:

"Such appeal may be taken by any person aggrieved within thirty days after the making of such order, judgment, decree, or decision . . . The right of appeal shall not be denied nor abridged for failure of the party appealing to present his defense in the probate court or to appear therein."

The last sentence in the statute quoted above was added by amendment in 1945 in an apparent response to the holding of this court in *In re Estate of Grindrod,* 158 Kan. 345, 148 P. 2d 278, upon which the Wileys now rely, and was obviously intended to permit a person to appeal, notwithstanding his failure to present defenses or appear in the probate court.

Once an appeal has been perfected, the district court has, and exercises, the same jurisdiction and power as though the controversy had originally been commenced in that court. Pleadings may be filed or amended, and the trial in, and the issues to be considered by, the district court are neither abridged nor restricted by any failure to appear, or by the evidence introduced, or the absence or insufficiency thereof, in the probate court. (K. S. A. 59-2408.) An appeal from other than an order admitting a will to probate suspends the operation of any order, judgment, decree, or decision appealed from until the appeal is determined or the district court shall otherwise order. (K. S. A. 59-2407.) It follows that in this case the appeal suspended the adoption decree of the probate court and brought the matter to the district court for a trial *de novo* on the pleadings filed in the probate court.

The Wileys argue that the issue of legitimacy was not raised in Mrs. Marsolf's pleading requesting withdrawal of her consent, and thus the district court erred in considering the question. We do not agree.

The adoption statute (K. S. A. 59-2102) requires that consent be given by both living parents of a legitimate child unless the consent of one or both parents is unnecessary under some other provision of the statute. If the child is illegitimate, the consent of the mother alone is sufficient.

It is well settled that the consent by the natural parents to the adoption of their child, where required by statute, is regarded as an essential requisite to jurisdiction on the part of the court to render a valid decree of adoption. (*In re Thornton,* 184 Kan. 551, 337 P. 2d 1027; 2 Am. Jur. 2d, Adoption §§ 24, 70; 2 C. J. S., Adoption of Children §§ 18, 45c. Also, see, *Walker v. McNutt,* 165 Kan. 533, 196 P. 2d 163.) Under the statute (K. S. A. 59-2278) the written consents required under the allegations of the petition for adoption (K. S. A. 59-2277) must be filed with the petition as a jurisdictional prerequisite. (3 Bartlett, Kansas Probate Law and Practice § 1447.) If after notice to "all interested parties" it develops at the hearing

on the petition that a required statutory consent has not been obtained, the court is without jurisdiction to enter a valid decree.

A court has the continuing duty of determining, even on its own initiative, whether it has jurisdiction of the subject matter before it, and the lack of such jurisdiction is not waived by the failure of a party to make timely objection thereto. (*Small v. Small,* 195 Kan. 531, 407 P. 2d 491, and cases therein cited.) Thus, the failure of Mrs. Marsolf to specifically raise the question of legitimacy, and the necessity of the father's consent to the adoption, did not preclude the court from considering evidence on the point, inasmuch as it pertained to jurisdiction of the subject matter of the adoption proceeding.

It may be noted that the report of the State Department of Social Welfare questioned whether the consent of the natural mother alone was sufficient, inasmuch as child support payments of the father made during 1964 had included the needs of Terry Kay. This, alone, put the court on notice that further inquiry was justified concerning the necessity of the father's consent.

There was ample evidence to support the finding of the district court that Terry Kay was a legitimate child born of the marriage of Carolyn Sue Marsolf and Gail Ray Marsolf. Mr. Marsolf was shown as the father on the original birth certificate. According to a social worker, Mr. Marsolf himself acknowledged that he "supposed" he was the father when he went to the Sedgwick County Welfare Department shortly after Terry Kay's birth to make arrangements for support of the children while he was in the armed forces. Mrs. Marsolf received a military allotment for all the children, including Terry Kay, while Mr. Marsolf was in service. In the second divorce decree, wherein Mr. Marsolf was ordered to pay child support, Terry Kay was listed as one of the five children born of the marriage. Mrs. Marsolf testified that Mr. Marsolf was Terry Kay's father, that her last sexual contact with Mr. Marsolf was just prior to her divorce on June 3, 1960, that she had had no contact with any other man prior to determining that she was pregnant, and that she did not know she was pregnant at the time of her divorce "because it had just happened."

A mother is deemed a competent witness to testify concerning the paternity of her child (*In re Estate of Julian,* 184 Kan. 94, 334 P. 2d 432; *Jensen v. Reeble,* 167 Kan. 1, 204 P. 2d 703), and Mrs. Marsolf's testimony, which the trial court apparently believed,

settled that question. Further, the law recognizes the presumption of legitimacy extends to a child born after parents have been divorced where conception takes place before the divorce decree is entered. (*In re Estate of Julian,* supra; *Jensen v. Reeble,* supra.) The effect of Mrs. Marsolf's testimony was that the child was conceived prior to the divorce, although birth was nine months and thirteen days thereafter (287 days). In *Jensen,* under analogous facts, this court refused to disturb the trial court's finding of legitimacy despite the fact that fifteen days more than the normal period of gestation (280 days) had elapsed from the date of the divorce until the child was born. We likewise uphold the finding of legitimacy in the instant case.

No contention is made that Mr. Marsolf failed to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition for adoption. Therefore, the consent of both parents was required. The father's consent not having been obtained, the court properly concluded it was without jurisdiction to grant the adoption.

The points discussed effectively dispose of the case; hence, other contentions advanced by the parties, including those raised in the cross appeal, become immaterial.

The judgment is affirmed.