No. 52,582

CATHERINE S. SHEPPARD, *Appellant,* v. STEVEN H. SHEPPARD, *Appellee.* ROY SUMNER AND DOROTHY SUMNER, *Intervenors and Appellees.*

(630 P.2d 1121)

Opinion filed July 17, 1981.

*Randall E. Fisher,* of Wichita, argued the cause, and was on the brief for the appellant.

*Arnold M. Mize,* of Derby, argued the cause, and was on the brief for the intervenors-appellees.

The opinion of the court was delivered by

MILLER, J.: This appeal is from the trial court's resolution of a child custody dispute arising from a post-divorce motion to change permanent custody of a minor child, Patrick Sheppard. The mother, Catherine S. Sheppard, is the plaintiff and appellant. The maternal grandparents, Roy Sumner and Dorothy Sumner, to whom custody was granted, are the intervenors and appellees. The adoptive father, defendant Steven H. Sheppard, did not participate in the proceedings below and does not appear here. The controlling issue on appeal is the constitutionality of K.S.A. 1980 Supp. 60-1610(*b*)(2), a new paragraph added to the statute in 1980.

Catherine is the natural mother of Patrick Sheppard, born on January 14, 1970. Catherine and Steven were married in 1974,

and Steven adopted Patrick. Catherine and Steven were divorced in 1977, and Catherine was awarded the legal custody of Patrick. Before and during the marriage, both Catherine and Patrick lived with Catherine's parents, Mr. and Mrs. Sumner, at Haysville. After the divorce, Patrick remained with the Sumners in order that he might continue to attend the Haysville schools. Catherine, meanwhile, moved to Wichita.

K.S.A. 1980 Supp. 60-1610(*b*)(2) became effective on May 17, 1980; Mr. and Mrs. Sumner filed a motion in the divorce case for change of custody one month later, June 18, 1980. The statute reads:

"(2) *At any time after custody of any minor child has been awarded pursuant to a divorce, annulment or separate maintenance decree, any person who has had actual physical custody of any such child after such decree was rendered with the consent of the parent having legal custody,* where applicable, *may request by motion* to the court rendering such decree *that legal custody of such child or children be awarded to such person. Notwithstanding the parental preference doctrine the court may award custody of any such child to such person if the best interests of such child will be served thereby;* and, if the court determines that a parental relationship has been established between such child or children and the moving party. No motion may be made pursuant to this subsection, unless the movant has had actual physical custody of the child or children within six (6) months from the date of the motion. In determining the best interest of the child, the court shall consider all relevant factors, including but not limited to the following: (A) The length of time that any such child has been under the actual care and control of any person other than a parent and the circumstances relating thereto; (B) the desires of the child's parents as to custody; (C) the desires of the child as to the child's custodian; (D) the interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests; (E) the child's adjustment to such child's home, school, and community; and (F) the mental and physical health and age of all individuals involved." [Emphasis supplied.]

The trial court, following a full evidentiary hearing on the grandparents' motion, found that Catherine is the natural mother of Patrick; that in the decree of divorce entered on August 17, 1977, Catherine was granted the custody of Patrick; that the intervenors, the Sumners, have had the actual physical custody of Patrick, with Catherine's consent, for a great period of time since the divorce; that the Sumners have developed a parental relationship with Patrick; that Catherine is not an unfit parent; that it is in the best interest of Patrick to be placed in the custody of the Sumners; and that K.S.A. 1980 Supp. 60-1610(*b*)(2) does not violate the due process or equal protection clauses of the United

States Constitution. The court then placed Patrick in the permanent custody of his grandparents, the Sumners, and granted biweekly visitation to Catherine. She appeals, contending first that the statute violates the due process clause and is therefore unconstitutional.

Throughout the years, Kansas courts have applied the parental fitness doctrine. The rule is succinctly stated in *Christlieb v. Christlieb,* 179 Kan. 408, 409, 295 P.2d 658 (1956):

"[A] parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his children as against grandparents or others who have no permanent or legal right to their custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them."

Many earlier cases which support the rule are there cited. Later cases stating and applying the rule are *Trompeter v. Trompeter,* 218 Kan. 535, 545 P.2d 297 (1975); *In re Eden,* 216 Kan. 784, 533 P.2d 1222 (1975); *Herbst v. Herbst,* 211 Kan. 163, 505 P.2d 294 (1973); *Irwin v. Irwin,* 211 Kan. 1, 505 P.2d 634 (1973); and *McGuire v. McGuire,* 190 Kan. 524, 376 P.2d 908 (1962).

K.S.A. 1980 Supp. 60-1610(*b*)(2) abrogates the rule in certain limited circumstances. It makes the best interests rule applicable between parents and third persons. The best interests rule has heretofore been applicable only in child custody disputes between the parents. See *Parish v. Parish,* 220 Kan. 131, 132, 551 P.2d 792 (1976), where we said:

"In determining the right of custody of children between parents, the primary consideration is the best interest and welfare of the children, and all other issues are subordinate thereto."

And see also *Hardenburger v. Hardenburger,* 216 Kan. 322, 532 P.2d 1106 (1975).

Before we consider the specific challenge to the statute, we should state the basic principles which we must apply in determining the constitutionality of a statute. These principles were stated in *City of Baxter Springs v. Bryant,* 226 Kan. 383, Syl. ¶¶ 1-4, 598 P.2d 1051 (1979), as follows:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution."

"In determining constitutionality, it is the court's duty to uphold a statute under

attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt."

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject are wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere."

In *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 614, 576 P.2d 221 (1978), we said that the test as to whether a statute comports with the due process clause is:

"whether the legislative means selected had a real and substantial relation to the objective sought. The rule has been restated in terms of whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community."

The statute here under consideration is a part of our divorce and alimony law, and relates to the care and custody of children of the marriage. The welfare of children is, of course, a matter of state concern. See *State ex rel. O'Sullivan v. Heart Ministries, Inc.,* 227 Kan. 244, 253, 607 P.2d 1102 (1980); and *Lennon v. State,* 193 Kan. 685, 396 P.2d 290 (1964).

Appellant contends that K.S.A. 1980 Supp. 60-1610(*b*)(2) violates the due process clause because it destroys the parental preference doctrine and allows a third party to take custody of a minor child even though the natural parent is fit. That is the situation before us: The court found the mother fit, but granted custody of the child to the grandparents, finding that such custody would be in the best interests of the child.

The reason for the parental preference doctrine is well stated by Justice Dawson in *In re Kailer,* 123 Kan. 229, 230, 231, 255 Pac. 41 (1927):

"[I]t is urged that the welfare and best interests of the children were the paramount issue. Under the law of the land the welfare and best interests of children are primarily the concern of their parents, and it is only when parents are unfit to have the custody, rearing and education of children, that the state as *parens patriae,* with its courts and judges, steps in to find fitting custodians *in loco parentium.*

.  .  .  .

"Putting the matter in another way, it is quite correct to say that the welfare of children is always a matter of paramount concern, but the policy of the state

proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be entrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves. There are enough of the latter sort of cases where the courts are compelled to interfere and take the custody of children from unfit parents, or to decide which of quarreling parents should have that custody—cases which search the hearts and consciences of judges as no other judicial duty does or can do. And no court should construe its intrusive jurisdiction as extending to cases where parents have done nothing offensive to law, morals, or good conduct, which would forfeit their paramount natural right of parenthood, which is to have the custody of their own children."

The language of Justice Dawson was quoted in *In re Vallimont,* 182 Kan. 334, 337, 321 P.2d 190 (1958). Syl. ¶¶ 1 and 3 in that case bear upon the issue at hand. They read:

"A parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to custody as against grandparents or others who have no permanent or legal rights to custody."

"Courts will not disturb the family relation nor take children from their parent merely because third persons seeking their custody may have larger means and are therefore able to give the children greater comforts, wider education and the promise of a larger inheritance."

The United States Supreme Court recently recognized the fundamental nature of the relationship between parent and child in two cases, both of which involve the rights of natural parents of illegitimate children: *Stanley v. Illinois,* 405 U.S. 645; 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972), and *Quilloin v. Walcott,* 434 U.S. 246, 255, 54 L.Ed.2d 511, 98 S.Ct. 549, *reh. denied* 435 U.S. 918 (1978). In the latter case the court said:

"We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.'"

In the light of those opinions, the Kansas Court of Appeals considered the matter of the rights of natural parents in the case of *In re Lathrop,* 2 Kan. App. 2d 90, 575 P.2d 894 (1978). In that case an unwed father sought to gain custody of his child as against third parties who sought to adopt. The Court of Appeals

affirmed the trial court, ruling that the natural father has a paramount right to custody over nonparents. The court said at 92-96:

"The thrust of the appellants' argument on appeal appears to be that the natural parents, by entering an illicit relationship, waived their constitutional rights of due process and equal protection regarding custody of their child. The appellee counters that in the absence of a finding of unfitness, case law and the federal and state constitutions protect his paramount right to custody of his natural child. Disposition of the issue requires consideration of the parental preference rule in Kansas, and the recent United States Supreme Court decisions in *Quilloin v. Walcott,* 434 U.S. 246, 54 L.Ed.2d 511, 98 S.Ct. 549 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972).

"It is well established in Kansas by statute and case law that natural parents are to be given preference as to custody of their children when such a contest occurs with a non-parent. *Herbst v. Herbst,* 211 Kan. 163, 505 P.2d 294; *In re Armentrout,* 207 Kan. 366, 485 P.2d 183; *In re Marsolf,* 200 Kan. 128, 434 P.2d 1010.

"However, there are several ways that a parent may be deprived of his parental rights on a permanent basis. First, K.S.A. 1977 Supp. 38-824 provides a method by which a child or children may be declared dependent and neglected and parental rights consequently severed. *In re Nelson,* 216 Kan. 271, 531 P.2d 48; *In re Bachelor,* 211 Kan. 879, 508 P.2d 862. Second, K.S.A. 60-1610(*a*) authorizes a trial court hearing a divorce or separate maintenance suit to terminate parental rights of either or both parents if the court finds that they are unfit. Finally, K.S.A. 59-2103 provides that when adoption occurs the natural parent's rights in and to said child or children shall cease. There are other instances provided for parents to divest themselves of the rights to children, but the facts in this case do not necessitate their enumeration.

. . . .

"The United States Supreme Court clearly established in its landmark decision, *Stanley v. Illinois,* supra, that an unwed father does have parental rights in his children and that those rights are substantial. The court there stressed that the rights to conceive and raise one's own children are essential rights, and further stated, 'The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection.' *Stanley,* supra, p. 651. . . .

. . . .

"This court has carefully considered the most recent pronouncement of the United States Supreme Court regarding the rights of a putative father in *Quilloin v. Walcott,* supra. That case involved the petition of a stepfather, now married to the natural mother of the child, to adopt a twelve-year-old illegitimate child. The natural father of the boy sought to prevent the adoption, arguing that under *Stanley* he was entitled to a fitness hearing before his parental rights could be terminated. He had never had custody of the child and had assumed only minimal responsibilities for his welfare and support. Furthermore, he was not requesting that he be given custody of the child; he only wished to prevent the adoption. The court stated, '*Stanley* left unresolved the degree of protection a State must afford to the rights of an unwed father in a situation, such as that presented here, in which the countervailing interests are more substantial.' (p. 248.) The court emphasized the strong state interest in having children reared in a family setting, and stressed that the adoption would confirm and stabilize an already existing family unit.

Balancing this strong interest against the weak interest of the father in vetoing the adoption, the court found that under the facts of the case, the natural father's rights of due process had been adequately protected by a 'best interest of the child' hearing, which of course requires a lesser quantum of proof than does a fitness hearing. The natural father also advanced an equal protection argument, asserting that his interests were indistinguishable from those of a divorced or separated father or a mother no longer living with her child. The court summarily dismissed this argument, stating, 'We think appellant's interests are readily distinguishable from those of a separated or divorced father, and accordingly believe that the State could permissively give appellant less veto authority than it provides to a married father.' (p. 256.) In support of this statement, the court pointed to the difference in the extent of commitment to the support and welfare of the child.

"It is clear that *Quilloin* does not abrogate the basic premise of the *Stanley* case; that is, that a putative father does in fact have parental rights in his child. The holding of the *Quilloin* case is actually quite narrow: the constitutional rights of an unwed father who merely seeks to veto the adoption of his child, without seeking custody of the child, are adequately protected by something less than a fitness hearing, and under the facts of that case his rights were protected by a 'best interest of the child' hearing.

"Applying the case and statutory law discussed above to the facts of the case at hand, we hold that Leon Scott, Jr., has parental rights to the custody of his child and under those circumstances that those rights must be given preference and will prevail over those of the adoptive parents due to the parental preference rule. *Stanley* establishes his parental rights and *Quilloin* does nothing to diminish those rights in this situation, where he appeared and asserted his desire to have the custody of his daughter soon after her birth. . . . The trial court found that he was a fit parent; therefore his right to have custody of his child is clear."

It is clear under our decisions and those of the United States Supreme Court that a natural parent's right to the custody of his or her children is a fundamental right wihch may not be disturbed by the State or by third persons, absent a showing that the natural parent is unfit. As we noted in *In re Cooper*, 230 Kan. 57, 631 P.2d 632 (1981), a parent's right to the custody, care, and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment of the Constitution of the United States.

The statute under consideration takes away that right. Fitness of a parent is no longer the criterion. If the trial court determines that the best interests of the child will be served by placing it with third persons, the court may do so. The parent need not consent, and he or she may be perfectly fit, willing, and able to care for and raise the child. No exceptional circumstances need exist.

The exact objective of the legislature is not clear. The act provides an expeditious method of awarding custody, despite the

existence of fit parents, to persons who have had temporary custody of the child with the consent of a divorced parent. It reaches only the children of divorced parents, not those of separated or unwed parents. The statute does not appear necessary in order to further the State's interest in the protection of children, for we have the juvenile code provisions to protect neglected children, and provisions in the civil code to provide for changes in custody and support, and for the removal of children from unfit parents. See K.S.A. 1980 Supp. 38-824, K.S.A. 1980 Supp. 38-1301 *et seq.*, and K.S.A. 1980 Supp. 60-1610(*a*) and (*b*)(1).

Catherine Sheppard appeared before the trial court opposing the motion of her parents and seeking to retain custody of her son. The trial court made a specific finding, upon conflicting evidence which we need not detail here, that Catherine Sheppard was not an unfit parent. Under the authorities cited above, she has a fundamental right, protected by the Due Process Clause of the Fourteenth Amendment, to the custody of her child, as opposed to all third parties. She cannot be denied that right for the sole reason that a court determines and concludes that someone other than a natural parent might do a better job of raising the child, thus furthering his "best interests."

We hasten to add that a parent's right to custody of a child is not absolute. The parent must not be "unfit," and the court hearing a custody matter must make that determination. In the case of *In re Vallimont,* 182 Kan. 334, 340, 321 P.2d 190 (1958), we said:

"While the standard of fitness required of parents is difficult to specify without being somewhat ambiguous, conduct which makes a parent unfit may be defined within limits. There is no statutory definition of the word 'unfit.' It therefore must be given its ordinary significance, having due regard to the context. In general, the word means unsuitable, incompetent, or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Parents who treat the child with cruelty or inhumanity, or keep the child in vicious or disreputable surroundings, are said to be unfit. Parents who abandon the child, or neglect or refuse, when able so to do, to provide proper or necessary support and education required by law, or other care necessary for the child's well being are said to be unfit. Violence of temper or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness. So, also, incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects."

See also *In re Armentrout,* 207 Kan. 366, 371-72, 485 P.2d 183 (1971).

What we hold here is simply this: that a parent who is not found to be unfit, has a fundamental right, protected by the Due Process Clause of the United States Constitution, to the care, custody and control of his or her child, and that the right of such a parent to custody of the child cannot be taken away in favor of a third person, absent a finding of unfitness on the part of the parent. We hold that K.S.A. 1980 Supp. 60-1610(*b*)(2), which destroys that fundamental right, is violative of the Due Process Clause and therefore unconstitutional.

We should note that we have reviewed the amendments to that section of the statutes by the 1981 Legislature which are included in H.B. 2029, and find those amendments do not resolve the infirmity.

We need not resolve the other issues raised by appellant in view of our determination of the Due Process issue.

The judgment is reversed.

McFARLAND, J., dissenting: I do not view K.S.A. 1980 Supp. 60-1610(*b*)(2) as constitutionally impermissible. In the vast majority of factual situations the parental preference doctrine is appropriate and should control. The statute in question merely provides a trial judge a discretionary alternative when certain conditions precedent are found to exist. Simply put: (1) When the trial court has acquired ongoing jurisdiction of a minor child through a divorce, annulment or separate maintenance action; *and* (2) when the parent receiving custody consents to another person having physical custody of the child; *and* (3) when a parental relationship has been established between the child and the third person—*then and then only* may the third person move for custody of the child in the original domestic relations action. In determining the motion the statute mandates that the court consider "all relevant factors, including but not limited to the following: (A) The length of time that any such child has been under the actual care and control of any person other than a parent and the circumstances relating thereto; (B) the desires of the child's parents as to custody; (C) the desires of the child as to the child's custodian; (D) the interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests; (E) the child's adjustment to such child's home, school, and community; and (F)

the mental and physical health and age of all individuals involved."

Unlike a juvenile court proceeding, the State is not attempting to take custody of a child. The proceeding authorized by K.S.A. 1980 Supp. 60-1610 is, of necessity, only one chapter in an ongoing domestic relations action. By virtue of its specialized conditions, relatively few custody changes could arise from it. However, it is a valuable addition to a trial judge's meager alternatives in child custody disputes.

Nowhere in the majority opinion is there any reference to a child's rights. Does the majority believe that only a parent has any rights? If the parent granted custody of a child sees fit to place that child with another person under such circumstances that a new family unit is created, does the child have no rights at all in the continuance of the new family unit? Does the majority consider the child as only a chattel belonging to the parents, to be lent and returned upon demand?

As a former district court judge I can certainly recall instances where this statute would have been highly desirable. The parent having custody may leave a child with relatives for many years, then suddenly want it back in a fit of guilt or due to changed circumstances. The relatives may well be the only home the child has known and a strong family unit has been created. The trial court should have the discretion to preserve the family unit as it now exists—whether such discretion should be exercised is dependent upon all relevant factors and is subject to judicial review.

I believe K.S.A. 1980 Supp. 60-1610(*b*)(2) does not fail the requisite test as enunciated by the majority in Syl. ¶ 1 as follows:

"The test as to whether a statute comports with the due process clause is whether the legislative means selected has a real and substantial relation to the objective sought, or whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community."

I would affirm.