NOT DESIGNATED FOR PUBLICATION

No. 113,662

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of I.H.,
Date of Birth: XX/XX/2009,
A Child Under the Age of 18 Years.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed February 26, 2016. Affirmed.

*Dennis J. Stanchik*, of Olathe, for appellant father.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: D.H. (father), the putative father of I.H., a minor child born in 2009, appeals the district court's order terminating his parental rights to I.H. Father was incarcerated throughout the child in need of care proceedings below. He spoke to his appointed counsel on one occasion but thereafter did not respond to counsel's calls or correspondence. Eventually the district court made its termination decision based on evidence it permitted the State to proffer, without objection from father's counsel, pursuant to K.S.A. 2014 Supp. 38-2248(f). Father argues on appeal that the district court erred when it allowed that proffer without first determining that father was aware of his statutory right to instruct his attorney to object to proceeding by proffer. We reject father's arguments and affirm the district court.

1

The facts relevant to father's appeal are not in dispute. On August 6, 2013, the State filed a petition which alleged numerous statutory grounds to support its claim that I.H. was a child in need of care (CINC) and should be removed from the home of his natural mother, Q.C. (mother). Mother executed a no contest statement and, on November 21, 2013, the district court adjudicated I.H. a CINC as to mother.

The State's CINC petition identified D.H. as I.H.'s putative father, although he had never been ordered to pay child support. The State asserted: "The mother reports that the father of the child has never been involved in [I.H.]'s life." The State further alleged that father's whereabouts were unknown but that mother believed he might be incarcerated. The State eventually located father at a federal prison in Wisconsin and served him with process. By that time the district court had appointed Michael Bartee as father's counsel. On February 20, 2014, the district court called the case for father's first appearance. Father appeared by Bartee. The State proffered the evidence it alleged in the petition and provided confirmation that father, in fact, was incarcerated and unable to meet I.H.'s needs. The district court adjudicated I.H. a CINC as to father. Based on the CINC adjudications of the parents, the district court entered "a disposition order which [was] a reintegration plan for . . . mother for six months." The court noted that when Father was "released from his status as an incarcerated person he [would] also be afforded a reintegration plan, or [he could] work on reintegration efforts while incarcerated."

The State eventually filed a motion to terminate the parental rights of both mother and father. Father did not include that motion in the record on appeal. On August 27, 2014, the district court conducted a hearing on the motion. Mother stipulated that she was unfit to parent I.H. and that those circumstances were unlikely to change. The district court accepted the stipulation and found mother unfit; but, by agreement among mother,

the State, and I.H.'s guardian ad litem, the court continued the termination hearing 120 days to give mother one last chance to change.

Father, still incarcerated, appeared by Bartee at that hearing. The district court took up the State's motion to terminate father's rights. The State indicated a desire to proceed by proffer. Bartee requested a continuance. He explained that he had talked to father by phone back in February. In that conversation father told Bartee that he had 1 1/2 years left on his sentence. Bartee said he had subsequently left phone messages with father's prison caseworker, sent father letters, and sent father a blank relinquishment form. However, father had not responded by phone or mail. Bartee's correspondences to father had not been returned undelivered. Bartee did not attempt to explain what further steps he thought he could take to obtain a response from father if the court granted a continuance. The district court denied the continuance request.

The district court indicated it would permit the State to proceed with its evidentiary proffer. Bartee did not lodge an objection to proceeding by proffer. The State submitted the following statement:

> "Judge, the father, [D.H.], was not available as a resource at the time the child came into custody while in the care of the mother.
> "The father is in a federal facility in Oxford, Wisconsin.
> "Our information is that he will not be eligible for release for his felony charges until May 27 of 2016.
> "He has not communicated with [the Kaw Valley Center] as to the welfare of the child and has not sought to have whatever form of contact, whether that would be in writing or sending him gifts or just any communication that might have been available albeit while he is incarcerated."

3

The district judge then inquired of mother concerning facts alleged in the CINC petition that had been proffered at father's first appearance. Mother confirmed that father had never had contact with the child. Mother also said she believed father went to prison when the child was "almost one." Finally, mother indicated that father never provided her with any form of child support.

Based upon the proffered evidence the district court found that father was unfit for several statutory reasons including K.S.A. 2014 Supp. 38-2269(b)(5) ("conviction of a felony and imprisonment"). The district court further found that father's unfitness was unlikely to change in the foreseeable future due to his incarceration, stating, "The foreseeability is overwhelmingly supportive of the fact that [father] will never be fit to parent this child." But the district court agreed to leave the "best interest [issue] open not because [father] deserve[d] that opportunity, but because [the court] want[ed] to track" father's proceedings with the continued termination proceeding regarding mother.

On January 9, 2015, the district court resumed the continued termination hearing. Bartee, appearing for father who was still in prison, reiterated that, in spite of his best efforts, he had still been unable to make contact with father. The district court determined that termination of mother's and father's parental rights was in I.H.'s best interests.

Father timely filed his notice of appeal.

ANALYSIS

Father states in his brief that his issue on appeal is that "the district court abused its discretion in concluding that the termination of [his] parental rights was in the best interests of the child." However, father does not challenge the truth of the facts on which the court relied to terminate his parental rights. Rather, he argues that the court should not have considered those facts in the first place. He contends that implicit in the proffer

4

statute is a requirement that the district court determine that an absent parent has been advised that the parent could prevent a proceeding by proffer by instructing his or her attorney to object. He further "respectfully suggests" that due process considerations justify imputing a similar requirement into the proffer statute. Finally, he maintains that had the court excluded the proffered evidence, as it should have, there would be no evidence on which to base a termination decision. Therefore, he concludes that the district court abused its discretion in ordering termination.

Thus, father does not actually challenge any aspect of the district court's judgment other than its admission into evidence of the State's proffer. We must, then, examine the statute father claims the court erroneously applied. As father acknowledges, the Revised Kansas Code for Care of Children (RKCCC), K.S.A. 2014 Supp. 38-2201 *et seq*., authorizes district courts to proceed by proffer as to parties not present in evidentiary termination hearings. K.S.A. 2014 Supp. 38-2248(f) provides: "In evidentiary hearings for termination of parental rights under this code, the case may proceed by proffer as to parties not present, unless they appear by counsel and have instructed counsel to object."

At the outset, we note that the State urges us to refuse to consider father's arguments. The State contends that father did not preserve his issues for appellate review because he did not object in the district court to proceeding by proffer and he failed to raise any due process challenge there. K.S.A. 60-404 provides that a party must object to the admission of evidence in order to argue on appeal that the erroneous admission of such evidence requires reversal. Also, and generally, we decline to consider constitutional or other grounds for reversal asserted for the first time on appeal. There are, however, several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the trial court may be upheld on

5

appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

Father concedes that he is raising his constitutional point for the first time on appeal. He also acknowledges that Bartee did not object to the State's request to proceed by evidentiary proffer. However, he claims that resolution of his issues is necessary to serve the ends of justice or prevent the denial of fundamental rights. The fundamental right he invokes is as follows: A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. He cites *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007), as authority for this proposition. We have no quarrel with this authority, as far as it goes. However, in *In re Adoption of A.A.T.*, 287 Kan. 590, Syl. ¶ 3, 196 P.3d 1180 (2008), *cert. denied* 556 U.S. 1184 (2009), our Supreme Court noted that the liberty interest of an unwed father, which we infer applies to father here, has requirements and limitations. It is not as automatically "fundamental" as father seems to assert. Nevertheless, because the facts concerning the proffer procedure at issue are not in dispute and father's purported fundamental parental rights have been affected by that procedure, we will consider, at least to an extent, father's claims.

*We decline to impute into the statute a requirement that is not in the statute*

First, Father insists that K.S.A. 2014 Supp. 38-2248(f) did not authorize the district court to proceed by proffer in this case because the court did not "inquire as to whether [father] had instructed [Bartee] to object." It is true that the district court did not specifically ask Bartee whether Father had instructed him to object. However, as a practical matter, Bartee's remarks regarding his inability to make contact with father rendered such an inquiry unnecessary. As explained above, after the State sought permission to proceed by evidentiary proffer, Bartee requested a continuance because his

6

"last communication with [father] was in February" via telephone and, since that time, he had been unable to contact father. Because father did not communicate with Bartee he could not have instructed counsel to do anything at all. Clearly, then, father, the party not present, did not instruct his attorney to object to the State's proceeding by proffer. The plain language of K.S.A. 2014 Supp. 38-2248(f) authorized the district court to proceed by evidentiary proffer.

Moreover, father fails to justify his request that we impute into the proffer statute language the legislature did not include. Interpretation of a statute is a question of law over which we exercise unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). "The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] An appellate court's first attempt to ascertain legislative intent is through an analysis of the language employed, giving ordinary words their ordinary meaning. [Citation omitted.]" *Cheney v. Poore*, 301 Kan. 120, 125, 339 P.3d 1220 (2014). When a statute is plain and unambiguous, we should not speculate about the legislative intent behind that clear language, and we should not read something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014).

Moreover, "in interpreting statutes we frequently point to parallel statutes [or provisions] and note that the language in one statute [or provision] may illustrate that the legislature knows how to state something that is omitted in another statute [or provision]." *Cady*, 298 Kan. at 749. K.S.A. 2014 Supp. 38-2248(b) illustrates that the legislature could have provided for what father asks us to impute. K.S.A. 2014 Supp. 38-2248(b) provides:

"(b) Prior to the acceptance of any stipulation or no contest statement, other than to names, ages, parentage or other preliminary matters, the court shall ask each of the persons listed in subsection (a) the following questions:

(1) Do you understand that you have a right to a hearing on the allegations contained in the petition?

(2) Do you understand that you may be represented by an attorney and, if you are a parent and financially unable to employ an attorney, the court will appoint an attorney for you, if you so request?

(3) One of the following: (A) Do you understand that a stipulation is an admission that the statements in the petition are true or (B) Do you understand that a no contest statement neither admits nor denies the statement in the petition but allows the court to find that the statements in the petition are true?

(4) Do you understand that, if the court accepts your stipulation or no contest statement, you will not be able to appeal that finding, the court may find the child to be a child in need of care and the court will then make further orders as to the care, custody and supervision of the child?

(5) Do you understand that, if the court finds the child to be a child in need of care, the court is not bound by any agreement or recommendation of the parties as to disposition and placement of the child?"

Whether K.S.A. 2014 Supp. 38-2248(f) should include the requirement for a district court's examination of the absent parent's counsel on the proffer issue is a question for the legislature, not this court. The legislature has the authority to afford the absent parent the protection father desires. But the legislature has not done so. K.S.A. 2014 Supp. 38-2248(b) demonstrates that the legislature knew how to require that the district court conduct an inquiry of the absent parent's counsel concerning instructions to object to proceeding by proffer. The legislature did not do so. Father fails to persuade us that we should read into the statute a requirement the legislature did not include.

*We decline to consider father's due process argument because it is not properly briefed.*

Second, father contends that in order to comport with the requirements of due process, this court should read a requirement into K.S.A. 2014 Supp. 38-2248(f) that is not readily found in its words, *i.e.*, before the district court can constitutionally proceed with a termination by evidentiary proffer it must find that the absent party was aware of

8

the statutory right to have counsel object. Other than as we noted above, we have no real quarrel with father's contention that "the right of a parent to the care and custody of his [or her] children is a liberty interest entitled to protection." Again, father cites *In re J.D.C.*, 284 Kan. at 166, as authority for this proposition. But we decline to consider that proposition in isolation. The Supreme Court in *In re J.D.C.* did more than just state a due process proposition. It described the proposition in the full context necessary for a proper due process analysis of whether the fundamental liberty interest in the proposition had been compromised:

> "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409, 49 P.3d 1274 (2002), *cert. denied* 537 U.S. 1088 (2002). In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due. 274 Kan. at 409.

> "A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Sheppard v. Sheppard*, 230 Kan. 146, 152, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982). That right, however, is not absolute. The welfare of children is a matter of State concern. *Sheppard*, 230 Kan. 146, Syl. ¶ 2. Before a parent can be deprived of [his or] her right to the custody, care, and control of her child, he or she is entitled to due process of law. 230 Kan. at 152-54.

> "A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute

9

procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335; *Winston*, 274 Kan. at 409-10." *In re J.D.C.*, 284 Kan. at 166-67.

Father has neglected to fully brief this issue. He has not attempted to establish by factual recitation or analysis that he was denied "a specific procedural protection to which he . . . was entitled." He simply asserts that he was entitled and that entitlement was denied. He fails to even refer to the *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), balancing test we must apply to such claims, let alone provide us facts, argument, and authority on what we should weigh in applying the balancing test. Therefore, we have nothing other than his claim on which to evaluate its propriety. We decline father's implicit request that we create analyses and arguments he chose not to make in order to evaluate their merits.

Issues not briefed by the appellant or raised incidentally in a brief and not argued therein are deemed waived and abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013); *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Moreover, failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *Friedman*, 296 Kan. at 645.

Father has failed to develop an actual due process argument, and he fails to support his claim that the statute deprives him of due process with any legal authority. Thus, we decline to consider father's due process claim, not because father failed to preserve it before the district court but because he failed to adequately brief his claim on appeal.

10

Father has failed to persuade us that the district court erred when it accepted the State's proffer without an objection from father's counsel and when it terminated father's parental rights based on the proffered facts.

Affirmed.