NOT DESIGNATED FOR PUBLICATION

Nos. 126,516
126,517
126,518
126,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.B., D.B., D.B., and D.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wilson District Court; DAVID ROGERS, judge. Submitted without oral argument. Opinion filed September 20, 2024. Affirmed.

*Sarah A. Elnicki*, of Beezley Law, LLC, of Girard, for appellant.

*Mary Ann Shirley*, special prosecutor, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and COBLE, JJ.

PER CURIAM: The natural mother (Mother) of four children all with the initials of D.B. (Children), appeals the district court's termination of her parental rights to the Children. She asserts that the district court's finding of unfitness was not supported by clear and convincing evidence. To that end, she asserts that there was insufficient evidence that the State provided reasonable efforts to help Mother carry out her case plan tasks. She also argues she rebutted the presumption of unfitness by showing she had completed case plan tasks and could care for the Children in the foreseeable future. After a thorough review of the record, we affirm the district court's finding terminating Mother's parental rights to the Children.

1

In October 2017, the State petitioned to adjudicate Mother's Children as children in need of care (CINC). The State alleged the Children were without adequate parental care, control, or subsistence that was not due solely to the lack of financial means of the parents and the Children were without the care or control necessary for their physical, mental, or emotional health. See K.S.A. 38-2202(d)(1), (2). The district court found probable cause to support the State's allegations and ordered the Children to be placed in protective custody.

An evidentiary hearing was held on the State's CINC petition, following which the district court determined the Children were CINC. A panel of this court affirmed the district court's finding in *In re D.J.B.*, No. 122,333, 2020 WL 4032849, at *1 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1041 (2021).

In June 2021, the State filed a motion for a finding of unfitness and termination of parental rights. The State asserted that the parents were unfit by reason of conduct or condition, rendering them unable to properly care for the Children, and such circumstances were unlikely to change in the foreseeable future. The State relied on five statutory factors as its basis for finding the parents unfit as well as one statutory factor presuming parental unfitness. The State later filed a prehearing motion asking the district court to find a presumption of the parents' unfitness.

In December 2022, the district court held a termination hearing on the State's motion for finding of unfitness and termination of parental rights and Mother's motion for finding of lack of reasonable efforts. The district court found Mother unfit and terminated her parental rights. Mother timely appealed. Additional facts are set forth as necessary herein.

ANALYSIS

I.      We examine the legal framework for reviewing Mother's appellate arguments.

Once a child is adjudicated a CINC, as here, the court may terminate a parent's rights to parent their children. This action marks the removal of both the rights and the responsibilities associated with raising their children. It often results in the children being placed in the foster care system or with a third party or relative adopting the child.

But we have long recognized that "[p]arents who have assumed parental responsibilities have a fundamental right to raise their children that is protected by the United States Constitution and the Kansas Constitution." *In re Adoption of C.L.*, 308 Kan. 1268, 1279, 427 P.3d 951 (2018). Nevertheless, the fundamental right to parent is not without limits. It is also a matter of State concern. *Sheppard v. Sheppard*, 230 Kan. 146, 152, 630 P.2d 1121 (1981). And the interest of the State of Kansas in the welfare of children "'may be asserted through state processes designed to protect children in need of care.'" *In re P.R.*, 312 Kan. 767, 778-79, 480 P.3d 778 (2021). Because of this, a statutory framework is in place to make sure there is sufficient evidence to support such a permanent decision by the court.

As an overarching statutory safeguard, before any termination can take place, the court must find by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 38-2269(a). Such a finding is tethered by a nonexclusive list of statutory factors the court must consider in reaching its conclusion that the parent is unfit. Here, because the State petitioned the court to terminate Mother's parental rights, the State has the burden to establish Mother is unfit to care for her Children and that her unfitness is unlikely to change in the foreseeable future. See K.S.A. 38-2269(a); *In re Adoption of B.B.M.*, 290

3

Kan. 236, 243, 224 P.3d 1168 (2010) (finding that the petitioner bears the burden of proving by clear and convincing evidence that termination of parental rights is appropriate).

But the statutory framework also leaves room for a rebuttable presumption of unfitness if certain other facts are present.

> "(a) It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:
>
> . . . .
>
> (6)(A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future." K.S.A. 38-2271(a)(6).

The State retains the burden to establish by clear and convincing evidence that the presumption factors are present in the case. But once it has done so, the parent has the burden to rebut the presumption of unfitness by a preponderance of the evidence. That is, the parent must establish he or she "is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future." K.S.A. 38-2271(b); see also *In re X.D.*, 51 Kan. App. 2d 71, 74-75, 340 P.3d 1230 (2014).

In reviewing a district court's termination of parental rights, this court views all evidence in the light most favorable to the State to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. In making this determination, this court does not "weigh

4

conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

So with that foundation explained, we proceed to the appellate claims made by Mother.

II.     The district court did not err in finding Mother unfit.

    A. *The State presented clear and convincing evidence that the presumption of unfitness applied, and Mother failed in her burden to rebut the presumption.*

Here, the State invoked the application of a presumption of unfitness under K.S.A. 38-2271(a)(6). The district court found that the State had met its burden to invoke the presumption. We will examine the court's findings on each of the three factors listed in the statute. K.S.A. 38-2271(a)(6)(A)-(C).

    1.  The Children were in an out-of-home placement, under court order for a cumulative total period of two years or longer.

This was not disputed by either party. The Children have been in State custody since October 2017—over five years at the time of the hearing.

    2.  Mother failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the Children into Mother's home.

At the time of the termination hearing in December 2022, Mother had not had a visit of any kind with her Children since May 2018. She had not submitted any proof of employment since 2018. Although there was a standard order for drug testing through hair follicle testing beginning in November 2018, Mother had provided none as of the date of the hearing in December 2022. This was undisputed and directly resulted in her

5

inability to see her Children. One cannot reintegrate with children when one is not willing to comply with court orders that are prerequisites to visitation.

By February 2022, Mother had made little to no progress on her action plan or case plan. The State continued to make services available to the family while the CINC adjudication was on appeal.

The district court set this out in its memorandum opinion as support for its conclusion that clear and convincing evidence supported the State's allegation that Mother had failed to carry out a reasonable plan.

    3.  There is a substantial probability that the parent will not carry out such plan in the near future.

The district court concluded that the evidence supported a finding that

"for the better part of four and a half years now, minimal effort has been expended by the [Mother] to comply with the case plan requirements and Orders of the court, therefore there does not appear to be a 'substantial probability' that [Mother] will carry out that plan in the foreseeable future. Even after the motion to terminate was filed in June of 2021, the parents attended only one of three case plan meetings and made minimal effort to comply with the requirements. No UA's or hair follicle tests were submitted to. It is noted that in the notes to the one post-severance motion filing case planning session that the parents did attend on October 1, 2021[,] the parents reported that they did not believe that they needed to take a drug test and that they did not see a reason for a hair follicle test. All despite the Orders of the Court to the contrary. No parenting classes were attended. No counseling was attended, and in fact as of November of 2021 Four County Mental Health reportedly considered the parents' cases to be 'inactive'. No verification of employment or of transportation was provided. And no visitation took place due to their refusal to submit to the Court Ordered drug tests."

We may look to the parent's past conduct as an indicator of future behavior. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). When assessing the foreseeable future, this court uses "child time" as the measure. The Revised Kansas Code for Care of Children—K.S.A. 38-2201 et seq.—recognizes that children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008).

Here, Mother has placed her needs above those of her Children and has consistently failed to perform the tasks necessary to be reunited with her Children. Her past behavior and lack of any change in circumstances since the beginning of this action was properly considered by the district court in predicting Mother's future conduct. That decision was supported by clear and convincing evidence.

Once we have found that the district court did not err in finding the elements of K.S.A. 38-2271(a)(6) have been satisfied by clear and convincing evidence, we turn to whether Mother rebutted the statutory presumption. Mother asserts that the State failed to provide adequate support to help Mother carry out her case plan tasks as necessary for reintegration. The court rejected Mother's position:

> "[B]ased upon the totality of all of the evidence presented, the Court finds that the efforts of DCF and its' [*sic*] providers have in fact been reasonable. They may not have been perfect; perfection is hard to come by, but there is nothing before the Court to suggest that the efforts made to facilitate reintegration were not reasonable. Opportunities were provided. The specifics of the case plan were laid out clearly every time such a case plan session was held."

We find no error in the district court's conclusion and find that it is supported by the evidence. "'The purpose of the reasonable efforts requirement is to provide a parent the opportunity to succeed, but to do so the parent must exert some effort.'" *In re M.S.*, 56

Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019). "Agencies must expend reasonable efforts toward reintegration but need not make 'a herculean effort to lead the parent through the responsibilities of the reintegration plan.'" *In re H.M.*, No. 124,961, 2022 WL 12121175, at *6 (Kan. App. 2022) (unpublished opinion).

Viewing the evidence in the light most favorable to the State, as we are required to do, we conclude that a rational fact-finder could have found it highly probable by clear and convincing evidence that Mother's parental rights should be terminated.

B. *Even if the district court's finding on the presumption of unfitness was not dispositive, there was sufficient evidence to establish Mother's unfitness under the nonexclusive factors also relied on by the district court.*

K.S.A. 38-2269(b)-(e) lists nonexclusive factors the district court may rely on to determine a parent is unfit. Any one of those factors alone may be grounds to terminate parental rights. K.S.A. 38-2269(f). Here, the court found that at least three of the statutory factors supported a finding of unfitness and termination of parental rights. The evidence, much of it already reviewed, supports the district court's findings.

1. Mother exhibited a lack of effort "to adjust [her] circumstances, conduct or conditions to meet the needs of the child." K.S.A. 38-2269(b)(8).

The evidence established that though Mother initially worked toward case plan goals and submitted some clean urinalysis (UA), she failed to follow a majority of her case plan tasks for over four years. KVC, an agency overseeing the Children's cases, submitted multiple court reports detailing Mother's case plan tasks along with Mother's progress. At the termination hearing, the parents' TFI Family Services (TFI) permanency supervisor, Vienna Rose, testified and acknowledged Mother's initial efforts to reintegrate the Children. She initially submitted negative UA drug tests, resided in a home that met minimum Department for Children and Families (DCF) standards, and

8

completed a required mental health assessment. But Mother became less cooperative over time. In August 2018, she reported they had moved but the address she provided was a vacant lot. KVC struggled to locate the parents, which hindered their ability to request UAs. After eventually locating Mother, KVC attempted to meet at her home, but neither parent would respond to phone calls or answer the door.

2. Mother failed "to maintain regular visitation, contact or communication with the child or with the custodian of the child." K.S.A. 38-2269(c)(2).

At the time of the termination hearing in December 2022, Mother had not had a visit of any kind with her Children since May 2018. There is no dispute that Mother failed to comply with UA testing and hair follicle testing, the prerequisites to seeing the Children.

In April 2018, the court ordered the parents to provide two consecutive clean UAs before visitation with the Children could continue. The parents submitted negative UAs, but the temperature of the samples were suspect and lab reports showed the negative results were abnormally diluted. The district court ordered the parents to complete a clean hair follicle drug test before they could visit the Children. KVC arranged for the hair follicle test and stated they would pay for the test if the parents attended the scheduled appointment but neither parent showed up. Rose testified that TFI also referred the parents to one of their partners to help the parents complete the drug testing and could provide transportation if needed. In fact, Rose testified the parents could have had a transportation plan if they did not have their own vehicles. The parents failed to submit a hair follicle drug test between the time the district court ordered it in November 2018 and the date of the termination hearing in December 2022. As far as the random UA drug tests, the parents explained they simply did not agree to call into the TFI hotline every day because it was not feasible. This choice resulted in the consequence that was made clear to them—they could not see the Children.

9

3. Mother failed "to carry out a reasonable plan approved by the court directed toward the integration of the child into [her] home." K.S.A. 38-2269(c)(3).

Throughout the case, the parents attended 5 out of 12 case plan meetings. Rose admitted the parents had adequate housing in December 2020, though they moved various times throughout the case and KVC generally was unable to obtain housing verification or even maintain contact with the parents. The parents' case manager and support worker reached out to them at least 12 times from June to December 2021 and received no answer or reply. Rose explained that TFI sent monthly parent-contact letters to the parents as a way of making multiple methods and attempts to communicate.

At one point, the parents provided proof of registration and insurance on their vehicle, but this was an ongoing case plan task as such information expires over time, and the parents failed to continue providing the information. Throughout the pendency of the case, the parents failed to participate in drug testing, failed to follow mental health recommendations, failed to attend or provide proof of attending parenting classes, and failed to provide proof of employment. Mother claimed she did not need mental health services and did not have insurance to cover the expenses. Mother's case manager provided information about the sliding-fee scale to help with the expenses. Rose also testified TFI could help with up to half of the out-of-pocket costs Mother would have been responsible for. Mother was also provided information for free parenting classes on multiple occasions. In March 2022, the parents claimed they completed parenting classes and sent their certificates of completion to an old case manager. The parents' permanency supervisor reached out to the case manager who stated she never received copies of the parenting certificates.

By February 2022, the parents had made little to no progress on their action plan or case plan. Rose testified TFI and KVC continued to make services available to the family while the CINC adjudication was on appeal. The parents had supervised visits

10

with the Children at the beginning of the case until 2018 but have not had contact with the Children since as both parents failed to provide a clean hair follicle drug test.

There is clear and convincing evidence TFI and KVC provided reasonable efforts for Mother to work toward reintegration with the Children. Despite reasonable efforts by appropriate public or private agencies, Mother failed to exert the necessary effort. Though Mother initially worked toward case plan goals and submitted some clean UAs, she failed to follow a majority of her case plan tasks for over four years. Mother merely had to submit a clean hair follicle sample to visit her Children and was constantly reminded of this task and provided information on how to accomplish such task, which she did not do. Mother did not establish she had gained and maintained employment or completed her parenting classes.

The record establishes clear and convincing evidence Mother failed to complete case plan goals, which led to a failure of reintegration despite reasonable efforts by appropriate agencies, and Mother failed to carry out a reasonable plan toward reintegration of the Children. See K.S.A. 38-2269(b)(7); K.S.A. 38-2269(c)(3). Mother also failed to rebut the presumption of unfitness under K.S.A. 38-2271(a)(6) and establish she is presently fit and able to care for the Children or will be fit and able to care for the Children in the foreseeable future. See K.S.A. 38-2271(b).

C. *Mother focuses her argument on the court's finding of unfitness and abandons any claim of error in the district court's best interests finding.*

Once a court makes a finding of unfitness, it next must determine whether termination of parental rights is "in the best interests of the child." K.S.A. 38-2269(g)(1). While a court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination depends on a preponderance of the evidence. *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021).

11

Here, the court found that termination of Mother's parental rights was in the best interests of the Children:

"[T]he Children have endured over five years of uncertainty and of instability; at least as it pertains to the issue of if and when their parents are going to take the steps laid out for them to get their children back. The children deserve better. They deserve stability and they deserve the right to move on with their lives."

Although Mother argues that the district court erred in finding her unfit, she fails to address the court's best interests finding. Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

III.     Mother fails to preserve her claim that the district court erred in denying her motion to dismiss for failure to hold a hearing within 90 days of the State's request to terminate her parental rights.

Mother argues the district court erred by not granting her motion to dismiss the State's petition for finding of unfitness and termination of parental rights. Mother claims the district court violated statutory requirements as the termination hearing was not held within 90 days of the State's request to terminate parental rights and the district court never made a finding that a continuance would be in the best interests of the Children.

The State claims the issue was not properly preserved for review as it was not raised and ruled on below under Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). The State acknowledges Mother moved to dismiss before the district court but claims the record is unclear on any hearing or ruling related to the motion. The record on appeal does not contain a transcript of a hearing on the matter and does not directly specify how the matter was handled. Seeing as the case continued to progress with a pretrial hearing, pretrial motions, and ultimately a termination hearing, the district court seems to have denied the motion. That said, Mother had a chance to renew the motion to

12

dismiss at the beginning of the termination hearing and failed to do so. Mother, therefore, failed to preserve the issue for appeal and/or designate a sufficient record on appeal to show the claim was raised and ruled on below.

IV.    Mother waived any argument regarding lack of service.

Finally, Mother suggests the State failed to timely attempt service on Mother. She claims that service of the State's motion for finding of unfitness and termination of parental rights occurred over one year after the motion was filed.

It is unclear when Mother was served with the State's motion for finding of unfitness and termination of parental rights. The return of service of the State's motion was filed with the district court on August 9, 2022. The pretrial order filed August 26, 2022—over three months before the termination hearing—specifically stated:

> "[The parents] acknowledge for the record that they have each received copies of the Motion to Terminate Parental Rights.
> "The Motion to Terminate Parental Rights is set for trial on December [6th and December 7th], 2022 beginning at 9:30 a.m. each day. The parents acknowledge notice of the hearing and no further notice shall be required."

Accordingly, Mother voluntarily appeared for both the pretrial hearing and the termination hearing, thus waiving a lack of service argument.

Affirmed.